UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Viola Plummer,

                                        Plaintiff,

                                                                    07 CV 6154 (WHP)

            -against-

Christine Quinn, Speaker of the City Council,

                                        Defendant.

------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR A
## <u>PRELIMINARY INJUNCTION</u>

### <u>Preliminary Statement</u>

    Defendant, Christine Quinn, as Speaker of the Council of the City of New York

(hereinafter "the City Council"), by her attorneys, submits this memorandum of law in

opposition to plaintiff's motion for a preliminary injunction.    Plaintiff complains that her

employer, the City Counsel, is precluded from disciplining her for engaging in disruptive

behavior which interferes with the efficient operation of the City Council.    After plaintiff

disrupted a City Council meeting on May 30, 2007, and continued this disruption after being

directed to desist by the Director of Security for the City Council, and thereafter threatened

Council Member Leroy Comrie with assassination, Ms Quinn as the Speaker of the Council,

directed that plaintiff be suspended without pay for a period of six weeks and that she sign a

letter of acknowledgment representing that she would thereafter conduct herself in a professional

manner, abide by the directions of sergeant-at-arms during Council meetings and refrain from

threatening any Council Member.    To date, plaintiff has refused to sign this letter of

acknowledgement, and now seeks a preliminary injunction to enjoin the City Council from

suspending and/or terminating her employment as staff member of the City Council. The motion for a preliminary injunction should be denied as plaintiff has failed to establish that she would suffer irreparable harm or that she has a likelihood of success on the merits of her underlying action.

## The Relevant Facts

Plaintiff, Ms. Viola Plummer, is a staff member of the City Council. Personnel employed at the Council are employed either as central staff who provide services to the Council at large or as a council member's staff. See Affidavit of Wayne Kawadler, sworn to on July 3, 2007, at ¶ 3 (hereinafter the "Kawadler Affidavit"). In either case, the staff member must be approved by Council's Administrative Services and such staff members are employed by the City of New York. Id. at ¶¶ 3 and 7. Each staff member must execute several documents which confirm that the City of New York is the employer and the employee will abide by various Rules of the City Council, including the City Council's Ethics Manuel. Id. at ¶ 4. Moreover, none of these forms refer to any personnel as a council member's employee. Id.

In September 2005, Council Member Charles Barron submitted a request for the City Council to employ Ms. Plummer as staff member for his staff. Id. at ¶ 7, and exhibit "4" thereto. In connection with her employment as a staff member for the City Council, and as an employee for the City of New York, Ms. Plummer specifically executed various documents, which indicate that she is employed by the City Council, rather than by Council Member Barron, as she asserts herein. Id. at ¶ 6, and exhibit "3" thereto. Thereafter, Ms. Plummer was subject to the same rules the regulations of any other staff member of the City Council.

On May 30, 2007, the City Council conducted a Stated Meeting during which the Council considered a bill to co-name numerous streets in the City. See Affidavit of Carl D'Alba, sworn

to on July 3, 2007, at ¶ 3 (hereinafter the "D'Alba Affidavit"). An amendment to be considered by the Council during this meeting would add Sonny Carson's name to the bill, co-naming a street in Brooklyn, New York. Id. During the debate of the street co-naming legislation Ms. Plummer repeatedly acted in a disruptive manner, she began yelling while certain Council Members addressed the Council, and interfered with the orderly proceedings of the Council. Id. at ¶ 5. The Director of Security for the Council, Carl D'Alba, specifically approached Ms. Plummer and directed her to stop disrupting the meeting, but she refused to do so and continued acting in a disruptive manner. Id. at ¶ 6. Thereafter, Ms. Plummer reportedly stated of Council Member Leroy Comrie, who had abstained from the vote concerning Sonney Carson, that: "If it takes assassination of his ass, he will not be a borough president in the borough where I live." Id. at ¶ 9. These comments were reflected in various newspapers and had a significant impact on the operation of the City Council.

As a result of plaintiff's disruptive conduct during the Council meeting and her threat to assassinate Council Member Leroy Comrie, the Speaker met with the Chief of Staff for the Council and the Director of Security for the Council as well as other senior staff and numerous members of the Council to assess the disruption caused by plaintiff. See Kawadler Affidavit at ¶ 11. Based on the Speaker's assessment of the disruptive nature of plaintiff's conduct and the effect such threats would have on the operation of the City Council, the Speaker determined to exercise her inherent powers to preside over the Council, as expressly provided by the City Charter (see New York City Charter § 44), and directed that the Chief of Staff send a letter to plaintiff, which: (a) notified plaintiff that she would be suspended without pay from employment at the Council for a period of six weeks; (b) reminder her that all employees of the Council must conduct themselves in a professional manner, refrain from disrupting the proceedings and abide

by the directions of the chair and the sergeant-at-arms during such proceedings; and (c) further explained the plaintiff must refrain from using threatening, intimidating, harassing, obscene or abusive language toward any Council Member or Council Staff while acting in her official capacity. The letter further directed plaintiff to sign an acknowledgement and indicate that she agreed to the terms of the letter, and explained that failure to comply with these terms would result in her termination as an employee of the Council. A copy of the letter is attached to plaintiff's complaint as Exhibit "B."

Plaintiff has refused to sign and return this letter and has now filed a complaint that asserts the following claims: (1) an equal protection claim, without identifying the particular class or other classes which are treated differently; (2) a due process, property right violation, assuming that she had a property interest in her employment as a staff member for the City Council; (3) a procedural due process violation, ignoring the fact that she is an employee at will; (4) a due process, liberty interest violation, ignoring her right to challenge any termination of employment and/or seek a name clearing hearing under Article 78; (5) a defamation claim, which assumes that she was a person of good name, credit and reputation; (6) intentional infliction of emotional distress; and (7) a First Amendment retaliation claim, which fails to identify the protected speech she asserts was the basis for the allegedly impermissible employment action. Additionally, plaintiff submits a motion for a preliminary injunction, which defendant now opposes and is presently before the Court.

# ARGUMENT

## I.    STANDARD FOR PRELIMINARY INJUNCTION

Initially, it must be observed that "[p]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." _Patton v. Dole,_ 806 F.2d 24, 28 (2d Cir. 1986). Moreover, when a moving party seeks a preliminary injunction "to stay governmental action taken in the public interest pursuant to a … regulatory scheme," the injunction should be granted only if the moving party can demonstrate irreparable harm and establish a likelihood of success on the merits. _Berry v City of New York_, 97 F.3d 689, 694 (2d Cir. 1996).

The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant. "An applicant for a preliminary injunction 'must show that it is _likely_ to suffer irreparable harm if equitable relief is denied.' Thus, a mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." _Borey v. National Union Fire Insurance Company of Pittsburgh_, 934 F.2d 30, 34 (2d Cir. 1991) (quoting _JSG Trading Corp._, 917 F.2d 75, 79 (2d Cir. 1990)) (emphasis in original). "Inequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." _Buckingham Corp. v. Karp_, 762 F.2d 257, 262 (2d Cir. 1985). "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." _Citibank, N.A. v. Citytrust_, 756 F.2d 273, 275 (2d Cir. 1985) (quoting _Bell & Howell: Mamiya Co. v. Masel Supply Corp._, 719 F.2d 42, 45 (2d Cir. 1983)); Mulligan, _Forward, Preliminary Injunction in the Second Circuit_, 43 Brooklyn L. Rev. 831, 833 (1977) (showing of irreparable harm is fundamental and traditional requirement in any action where preliminary injunctive relief is sought).

## POINT  I

## PLAINTIFF HAS FAILED TO ESTABLISH THAT
## SHE WOULD SUFFER IRREPARABLE INJURY

In considering the imposition of a preliminary injunction in the context of a governmental employee who is subjected to discipline, including termination of employment, the Supreme Court has articulated a particularly stringent standard for assessing irreparable injury.  _Sampson v Murray_, 415 U.S. 61, 91-92 (1974).   The Court explained that except in a "genuinely extraordinary situation," irreparable harm is not shown in employee discharge cases simply by a showing of finical distress or difficulties in obtaining other employment.  _Id_. at 92 n. 68; _American Postal Workers Union v. United States Postal Service_, 766 F.2d 715, 721 (2d Cir, 1985).

Plaintiff asserts that she has established sufficient irreparable harm merely by asserting a First Amendment Violation in her underlying complaint.  See Plaintiff's Memorandum of Law dated in Support of the Motion for a Preliminary Injunction, at p. 9 (hereinafter Plaintiff's Memorandum of Law").   While defendant acknowledges that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" _Elrod v. Burns_, 427 U.S. 347, 373 (1976), the mere assertion of a First Amendment right does not in itself satisfy the irreparable harm requirement.   In order to establish irreparable harm in this context "the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." _Bronx Household of Faith v. Bd. of Educ._, 331 F.3d 342, 350 (2d Cir. 2003).   Thus, merely asserting a  First Amendment claim does not establish the requisite irreparable injury.   The alleged chilling effects claims need to articulate  a specific future harm or, at least, the threat of such harm. See _Laird v. Tatum_, 408 U.S. 1, 14 (1972); _Bronx._

*Household,* 331 F.3d at 350; *Bray v City of New York*, 346 F. Supp. 2d 480, 488 (SDNY 2004). Theoretical or conjectural harm is insufficient. See *Latino Officers Ass'n v. Safir,* 170 F.3d 167, 171 (2d Cir. 1999); *Bray*, 346 F. Supp 2d at 488.

The Second Circuit has specifically addressed the issue raised by plaintiff and determined under these circumstances, irreparable harm is not established.  See *American Postal Workers Union v. United States Postal Service*, 766 F.2d 715, 722 (2d Cir 1985);   In *American Postal Workers*, the Second Circuit reversed the District Court's grant of a preliminary injunction when an employee claimed a First Amendment violation for sending a letter to customer which was critical of the United States Postal Service.   The Court acknowledged that even though the purported speech was at least in part about a matter of public concern and that the threatened termination was specifically because this letter was sent, the plaintiff therein failed to establish irreparable injury as plaintiff's failed to demonstrate his discharge "would have a chilling effect on [plaintiff's] exercise of their first amendment rights."  Id.   The Court explained that the question concerning the existence of irreparable harm is twofold:  first, whether the employee's first amendment rights are implicated; and if so, whether the pending termination sufficiently chills the exercise of those rights to justify preliminary injunctive relief.  Id. at 721.  The Court then explained:

> [W]e fail to understand how a chilling of the right to speak or associate could logically be thawed by the entry of an interim injunction, since the theoretical chilling of protected speech and union activities stems not from the interim discharge, but from the threat of permanent discharge, which is not vitiated by an interim injunction.

Id. at 722.  This analysis has been followed by the Courts in this Circuit and effectively demonstrates that plaintiff has failed to establish an irreparable harm to justify the injunctive relief sought.  See, e.g., *Costello v. McEnery*, 767 F. Supp. 72, 76-78 (SDNY 1991)(denying a

preliminary injunction and explaining "because the 'chill' on the First amendment rights of either plaintiff or other PVB employees is the permanent loss of plaintiff's job, the interim injunctive relief plaintiff seeks in his instant motion will do nothing to thaw that chill").

## POINT II

## PLAINTIFF HAS FAILED TO ESTABLISH THAT SHE HAS A LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    Plaintiff Fails To State A Claim For First Amendment Retaliation As She Fails to Identify Any Protected Speech

A simple review of plaintiff's federal complaint demonstrates that plaintiff has failed to articulate the protected activity for which she claims she is being retaliated. The complaint does nothing more than assert than:

> 28.    During the debate and vote, spontaneous comments arose from all parts of the floor and gallery of the City Council chambers.

> 29.    In the early weeks of June, local New York City newspapers reported that defendant Quinn was exploring ways of firing Mrs. Plummer for a comment she allegedly made concerning the future political aspirations of Councilmember Leroy Comrie. The alleged comment was made outside of City Hall after the May 30th City Council meeting.

See Plaintiff's complaint. At no point does plaintiff ever assert that she engaged in any protected speech. Indeed, plaintiff's affidavit in support of this motion for a preliminary injunction further fails to identify any protected speech that she purportedly engaged in and for which she is being allegedly retaliated against.

Indeed it is undisputed that the necessary elements of a First Amendment retaliation claim are:

> (1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal connection exists between [his] speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination [to reject his application for employment].

Washington v. County of Rockland, 373 F.3d 310,320 (2d Cir. 2004).    Obviously, where plaintiff fails to assert that she actually engaged in any speech, she has failed to satisfy an essential element if the claim and her claim should be dismissed for failure to state a claim. F.R.Civ.P. 12(b)(6).


**B.    Plaintiff Threats of Assassination Cause**
**Disruption Of The City Council Operations**

Although plaintiff fails to specifically identify the speech she says is the basis for her being disciplined, this speech was covered in many local newspapers, as noted in plaintiff's federal complaint. See Complaint ¶ 29.  The speech noted in the newspapers, and was noted by the Director of Security for the Council, Mr Carl D'Alba.  The speech at issue was specifically: "If it takes assassination of his ass, he will not be a borough president in a borough where I live." These statements were reportedly made by plaintiff about Council Member Leroy Comrie, because he abstained in voting to name a street after Sonny Carson.  Apparently, plaintiff now wants to back away from her statement as the memorandum of law in support of her motion, but not her own affidavit, asserts that this speech referred to Mr. Comrie's political future rather than his life.  The speech, however, makes no such distinction, and as a threat against any Council Member must be taken seriously.

Regardless of plaintiff's current spin on her purported speech, there can be no first amendment violation if the speech at issue does not concern an issue of public concern. Significantly the Second Circuit has conferment that such threats and comments about physical injury to another individual cannot constitute protected speech. In Blackman v. New York City Transit Authority, 2007 US App. LEXIS 14705, No. 06-4714-cv, at *2-3 (2d Cir. June 21, 2007), the Second Circuit was confronted with a claim of first Amendment retaliation "involving a governmental employee who was fired after he commented that he thought two Transit Authority supervisors who had been recently murdered 'deserved what they got for getting [a Transit Authority employee] fired.'"   Although the District Court found that the speech did not address an issue of public concern, the Second Circuit noted that "the question of whether plaintiff's statement touched on matters of public concern is a complex one", and the Court chose to assume *arguendo* that it did address an issue of public concern in order to apply the *Pickering Balancing test.* *Id* at *4.  The Court concluded that:

> assuming *arguendo* that Blackman's comments *did* implicate a matter of public concern, we find that, at the balancing stage, the government's interests plainly outweigh those of Blackman.  It is clear . . . that a government official may, in certain circumstances, fire an employee for speaking -- even on a matter of public concern -- where that speech has the potential to disrupt the work environment.

*Id.* at 11-12.  The same *Pickering balancing* should be applied to this case to preclude any claim of First Amendment retaliation.  It cannot be disputed that when staff members threaten the life of Council Member that would necessarily create a serious disruption in the operation of the City Council.

In considering this issue, it should be observed that the Ninth Circuit had addressed a situation where a municipal employee, an attorney had initiated suit against various City officials claims that they had acted unlawfully, and she was thereafter fired.  The Ninth Circuit affirmed

the District Judge's denial of a motion for a preliminary injunction, and observed that under the *Pickering balancing* test, even though the employees underlying suit might have some merit, there was inevitably such disruption cause by having the attorney return to work, that the City's interest in efficient operation of its business outweighed the plaintiff's First Amendment interests. See *Rendich v City of Tacoma*, 123 F.3d 1216 (9th Cir 1997).

**C.    Plaintiff Fails To Establish A Property Interest In Her Employment As a Staff Member for The City Council**

Plaintiff asserts that she somehow has a property interest in her employment and was therefore denied due process when she suspended without notice or an opportunity to be heard. Plaintiff's premise is faulty: as an at will employee, she does not have a property interest and thus cannot present a claim for due process violation. See *Jannsen v. Condo*, 101 F.3d 14 (2d Cir. 1996) (a probationary employee has no property interest in employment); *Finley v. Giacobbe*, 79 F.3d 1285 (2d Cir. 1996).

It is well settled that the type of process due to an employee "depends upon whether the alleged violation was caused by 'established state procedures' or by 'random, unauthorized acts by state employees.'" Hellenic American Neighborhood Action Committee v. City of New York (HANAC), 101 F.3d 877, 880 (2d Cir. 1996). Where the alleged violation stems from a random, unauthorized act, due process is afforded so long as a post-deprivation remedy is available. See HANAC, 101 F.3d at 880. Here, plaintiff, an at-will employee, clearly had no property interest in his position and has failed to explain how the defendants have deprived plaintiff of a liberty interest.

Even if plaintiff was deprived of an alleged property or liberty interest, plaintiff's due process claims must fail because plaintiff had adequate state law remedies available to her to

address the alleged unauthorized act of Speaker Quinn. In this case, plaintiff does not allege that the alleged deprivation of his property or liberty interests stemmed from established procedures but rather alleges that the random acts of Speaker Quinn, motivated by personal animus and without lawful authority, deprived plaintiff of an alleged property and/or liberty interest.

If plaintiff truly believed, as alleged in the complaint, that Speaker Quinn's acts were somehow unauthorized, unjustified or unlawful, the proper method to challenge these alleged acts would be to file an Article 78 proceeding in New York State Court. Article 78, not a federal due process lawsuit, is "the customary procedural vehicle for review of administrative determinations." Mitchell v. Fishbein, 377 F.3d 157, 170 (2d Cir. 2004). In an Article 78 proceeding, plaintiff could have challenged the legality and validity of her suspension, specifically whether Speaker Qunn's alleged acts were "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." N.Y. Civ. Prac. L. & R. § 7803(3).

It is also well settled that the availability of an Article 78 proceeding constitutes an adequate post-deprivation due process remedy in circumstances such as the ones alleged by the plaintiff herein. See HANAC, 101 F.3d at 880; see also Locurto v. Safir, 264 F.3d 154, 174-75 (2d Cir. 2001) ("as long as terminated city employees were afforded an adequate post-termination remedy in the form of an Article 78 proceeding in New York State Supreme Court, their due process rights were not violated by having a biased adjudicator at their pre-termination hearing."). It is equally clear that an Article 78 petitioner can also raise constitutional challenges to the acts of a government employer through an Article 78 proceeding. See Moccio v. New York State Office of Court Administration, 95 F.3d 195, 199 (2d Cir. 1996) (noting that an

individual may challenge the constitutionality of a disciplinary act of the state in an Article 78 proceeding).    For these reasons, the Second Circuit has repeatedly held that an Article 78 proceeding is a "perfectly adequate post-deprivation remedy" in situations involving claims of deprivations of liberty or property interests where such deprivations result from allegedly random and unauthorized employment actions concerning City employees.    See e.g. Giglio v. Dunn, 732 F.2d at 1134-35; Gudema v. Nassau County, 163 F.3d 717, 725 (2d Cir. 1998); Chaffer v. Bd. of Educ., 229 F. Supp. 2d 185, 189 (E.D.N.Y. 2002); Rosenthal v. Bd. of Trustees, 999 F. Supp. 498, 506 (S.D.N.Y. 1998).

Thus, it is clear that mere availability of an Article 78 challenge provided plaintiff with sufficient process to protect any alleged property or liberty interest under the circumstances presented herein.    Accordingly, the it is clear that plaintiff's due process claims are entirely without merit.

## CONCLUSION

For all the reasons stated above, the defendant respectfully seek an order denying Plaintiff's motion for a preliminary injunction, and for such other relief as to this Court seem just and proper..

Dated:        New York, New York
              July 3, 2007

                            MICHAEL A. CARDOZO
                            Corporation Counsel of the City of New York
                            Attorney for City Defendants
                            100 Church Street, Room 2-104
                            New York, New York 10007
                            (212) 788-0881

                            By: _____
                                 James M. Lemonedes (JL-8593)
                                 Assistant Corporation Counsel