UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x    ECF CASE

VIOLA PLUMMER,                                              x

              Plaintiff,                            x    07 Civ. 6154 (WHP)

  -against-                                                    x

CHRISTINE QUINN, Speaker of the Council     x
of the City of New York,
                                                        x

              Defendant.
-------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**PAGE**

Table of Cases .................................................................................................................. i

I. Introduction ............................................................................................................. 1

II. Statement of Facts................................................................................................... 2

III. The Plaintiff is Entitled to a Preliminary Injunction............................................... 8

      A. Irreparable Harm......................................................................................... 9

      B. Likelihood of Success on Merits .............................................................. 10

           1. The Speaker Lacks the Power to Discipline the Plaintiff .............. 10

           2. First Amendment Claims ............................................................... 12

           3. Due Process Claims ....................................................................... 17

Conclusion ..................................................................................................................... 19

## TABLE OF CASES

PAGE

*Bery v. City of New York*, 97 F.3d 689 (2nd Cir. 1996).................................................................. 9

*Bray v. The City of New York*, 346 F.Supp. 2d 480 (S.D.N.Y. 2004) ........................... 9, 18, 19

*Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342 (2nd Cir. 2003) ............................... 9

*Connecticut v. Doehr*, 501 U.S. 1, 12 (1983) ........................................................................ 17

*Connick v. Myers*, 461 U.S. 138, 142 (1983)......................................................................... 14

*Deeper Life Christian Fellowship, Inc. v. Board of Eduction*, 852 F.2d 676 (2d Cir. 1988).................................................. 9

*Elrod v. Burns*, 427 U.S. 347 (1976)........................................................................................ 9

*Fuentes v. Shevin*, 407 U.S. 67, (1972).................................................................................. 17

*Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006) ......................................................... 13, 14

*Harman v. City of New York*, 140 F.3d 111 (2nd Cir. 1998) ............................................... 13

*Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2nd Cir. 1996..................................................................................... 19

*Jeffries v. Harleston*, 52 F.3d 9 (2nd Cir. 1995)..................................................................... 13

*Krimstock v. Kelly*, 306 F.3d 40 (2nd Cir. 1002) .................................................................. 18

*Latino Officers Ass'n v. Safir*, 196 F.3d 458 (2nd Cir. 1999)................................................. 9

*Locurto v. Giuliani*, 447 F.3d 159 (2nd Cir. 2006). .......................................................... 13, 14

*Matthew v. Eldridge* 424 U.S. 319 (1976)............................................................................. 18

*Melzer v. Bd. of Educ.*, 336 F.3d 185 (2nd Cir. 2003) ........................................................... 16

*New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123 (2nd Cir. 1998)............. 9

*New York Times v. Sullivan* 376 U.S. 254 (1964) ................................................................ 14

*Pickering v. Board of Educ.*, 391 U.S. 563 (1968) ...................................................................13, 17

*Rankin v. McPherson*, 483 U.S. 378 (1987).................................................................................. 16

*Sheppard v. Beerman*, 317 F.3d 351 (2nd Cir. 2003) ................................................................... 16

*Statharos v. New York City Taxi and Limousine Comm'n* 198 F.3d 317 (2nd Cir. 1999) .............. 9

*United States v. James Daniel Good Reap Prop.*, 510 U.S. 43 (1993) .........................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x        ECF CASE

VIOLA PLUMMER,

          Plaintiff,        07 Civ. 6154 (WHP)

   -against-

CHRISTINE QUINN, Speaker of the Council
of the City of New York,

          Defendant.
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

The plaintiff, Viola Plummer, who currently holds the position of Chief of Staff to a duly elected Councilmember of the City Council (hereinafter "Council"), Councilman Charles Barron, submits this memorandum of law in support of her motion for a preliminary injunction.

The plaintiff has moved for a preliminary injunction to enjoin defendant, Christine Quinn, Speaker of the City Council, from implementing an act which is outside her authority as Speaker, i.e. the suspension and/or termination of an employee hired by a fellow City Councilmember. The alleged grounds for this action are that the plaintiff engaged in "disruptive actions" and made "threatening statements." In reality, the actions taken by the defendant are based on the plaintiff's protected First Amendment expression as well as her race and involve a violation of the First, Fifth and Fourteenth Amendments to the United States Constitution.

II..    STATEMENT OF FACTS

The plaintiff, Viola Plummer, is a 70-year-old, U.S.-born female of African descent, residing in Queens, New York. She was hired in September, 2005, by and has been employed since that time as the Chief of Staff for City Councilman Charles Barron. (See Plummer Affidavit, Order to Show Cause). At all times stated herein, plaintiff has been a competent, loyal and dedicated employee who has and continues to have the full support and backing of her employer, Councilmember Barron.

The City Council of the City of New York is a legislative body established under the New York City Charter (Chapter 2, sec. 21), which is composed of 51 elected members from around New York City. 25 members of the City Council are Black, Latino or Asian; 26 are white. The composition of the Council and the duties of the Councilmembers are set out in two documents, the New York City Charter, §§ 21-49, and the Rules of the City Council. The powers of the Speaker of the Council are set forth in Chapter II of the Rules of the Council. The powers of the Presiding Officer of the Council are set forth in Chapter III of those rules.

The rules of the City Council provide that "[T]he Council shall elect from its members a Speaker…" [Exhibit A Complaint, Rule 2.00]. In January, 2006, Christine Quinn was elected as Speaker of the Council. City Councilmember Charles Barron did not vote for defendant Quinn.

Neither the City Charter nor the Rules of the Council empower defendant Quinn to exercise the kind of unilateral and arbitrary authority to discipline the plaintiff herein. The City Charter says only the following: "The council shall consist of the public advocate and of fifty-one other members termed Councilmembers." New York City Charter, §22. The only mention in the City Charter of the Speaker is found in §44. That section of the Charter provides that the "council shall elect from among its members a speaker and such other officers as it deems appropriate." The only duties laid

2

out in the Charter for the Speaker is that the speaker "shall preside over the meetings of the council." *Id.* There is no further delineation of the duties or responsibilities of the Speaker in the Charter, and certainly no provision of the City Charter which could be interpreted as giving to the Speaker the kind of powers she now seeks to discipline, suspend or terminate staff members of individual City Councilmembers.

Nor can these powers be found in the Rules of the Council. The City Council has promulgated its own set of rules to govern its conduct. Chapter II of those rules sets forth the duties and responsibilities of the Speaker. These rules do not give the Speaker the power which she now seeks to exert, namely, to suspend and/or terminate staff of individual Councilmembers for conduct described in only the most vague and overbroad terms. Section 2.40 of the Rules of the Council sets forth the Speaker's duties with respect to personnel. These duties do not include the power to discipline staff of individual Councilmembers. Section 2.40 states in relevant part,

> The Speaker shall provide to each member an annual report detailing the names of all individuals receiving compensation for work performed for the Council, its members or any of its committees, the amount of such compensation, and a title and job description (including identification of the function or division of the Council to which the individual is assigned). Each report shall also set forth the amount of allowance in lieu of expenses received by each Committee chairperson.

Section 2.40 above sets forth the full extent of the powers given to the Speaker by the Rules of the Council with regard to personnel matters. It says nothing about the power to discipline, suspend or terminate a staff member of an individual Councilmember.

Each City Councilmember selects and hires his/her own staff, whose salary is paid from the budget allocated to that member. The Speaker of the City Council has no explicit or implicit legal authority, under the New York City Charter or the Rules of the City Council, over the selection,

hiring or firing of individual City Council member's staff. Defendant Quinn had no role in the selection or hiring of Mrs. Plummer by Councilmember Barron. On information and belief, no staff person of a City Councilmember has ever been subjected to the forms of discipline that defendant Quinn now seeks to impose on the plaintiff.

In April of 2007, Councilmember Albert Vann submitted a proposal, forwarded to him by Community Board 3, to co-name four blocks of Gates Avenue in the Bedford-Stuyvesant section of Brooklyn after "Sonny Abubadika Carson" an African-American political activist, a Black Nationalist, who had devoted his adulthood to the struggle against racism and towards improving the quality of life for Black people in New York City. Mr. Carson's name was submitted along with 51 other names proposed by Councilmembers around the City.

The City Council votes twice yearly on street co-namings. On information and belief, until April of this year, the City Council had never refused a street co-naming proposed by any Councilmember.

In April of this year, defendant Quinn took the unprecedented action of opposing the co-naming of four blocks of Gates Avenue in Brooklyn, New York, for Sonny Carson. On information and belief, she used her power and influence as Speaker to have his name deleted when it was considered by the Parks and Recreation Committee. At a Stated Meeting of the City Council on May 30, 2007, the issue of the co-naming of streets was discussed. The meeting was chaired by the Public Advocate, Betsy Gotbaum. Speaker Quinn attended the May 30, 2007 meeting, but, importantly, she was not the presiding officer at the meeting, that role being filled by the Public Advocate.

On May 30, 2007, following City Council rules, Councilmember Vann submitted an amendment to include Sonny Carson's name among those to be considered for approval by the full Council.

On information and belief, prior to the submission of the Vann amendment, defendant Quinn used her position as Speaker to ensure defeat of the amendment. City Councilmember Barron stated prior to the vote that he believed that defendant Quinn already had all the votes in place to defeat the amendment and that racism was the basis of the opposition to the street naming.

After other speakers, both pro and con, addressed the issue, the Vann amendment was defeated along racial lines by a vote of 15 (for), 25 (against), 7 (abstentions). 24 of the 25 white city Councilmembers voted against the amendment. 14 of the 15 votes in favor were members of the Black, Latino and Asian Caucus.

During the debate and vote, spontaneous comments arose from all parts of the floor and gallery of the City Council chambers. Although the meeting was contentious and the comments reflected strongly held beliefs on both sides of the debate, at no time did Public Advocate Gotbaum ever direct that the Council Chambers be vacated, direct the Sergeant at Arms to remove anyone from the Council Chambers, or order the arrest of anyone for any comments or actions taken during the debate. Nor has Public Advocate Gotbaum sought to discipline the plaintiff for her actions or conduct on May 30, 2007. Moreover, at no time during the meeting did Speaker Quinn request that any disciplinary or other actions be taken against Plummer or anyone else who was in attendance or who spoke at the meeting.

Since she was not the Presiding Officer of the May 30, 2007 Council meeting, Speaker Quinn lacked the power to enforce order and decorum, or breaches thereof, which might have occurred at

the meeting. Rule 3.10 of the Rules of the Council state that the "presiding officer shall preserve order and decorum. In the event of disturbance or disorderly conduct in the Chamber, lobby or gallery, the presiding officer may cause the same to be cleared." The presiding officer of the Council on May 30, 2007 was Public Advocate Betsy Gotbaum.

Moreover, whatever the extent of the Speaker's powers, they certainly do not extend to disciplining a staff member of an individual Councilmember for First Amendment activity engaged in by a staff member of an individual Councilmember in a location other than "the Chamber, lobby or gallery," in that staff member's individual capacity, the very conduct that the plaintiff is now being disciplined for.

Following the meeting of the Council, the plaintiff, acting not in her official capacity as the Chief of Staff for Councilmember Barron, but in her individual capacity as a political activist, which she has been for several decades, made certain statements to political supporters concerning the future political prospects of Leroy Comrie, a black Councilmember from Queens. At all times it was understood by those in attendance, and the plaintiff specifically explained at that time and afterwards, that her comments referred to Comrie's political career, particularly since it is well known that Councilmember Comrie is weighing a bid for Queens borough president in 2009. Moreover, Councilmember Barron has stated that he understood the plaintiff's comments about Comrie to be referring to his future political aspirations.

At no time was it the plaintiff's intent or purpose to physically threaten the safety of Councilmember Comrie and even Councilmember Comrie understood this. He is reported to have said that he "never felt "threatened individually" by Plummer's comments." (See, New York Daily News Blog, "The Daily Politics," May 31, 2007). He is also reported to have said, "I personally did

not seek [police] protection." (See, Queens Tribune Online, June 10, 2007). Moreover, Councilmember Comrie has not sought any criminal process against Plummer for her comments.

Despite the fact that Comrie did not perceive Plummer's remarks as threatening him with physical harm, defendant Quinn took it upon herself to state that Plummer should be disciplined. Note that at the time the remarks were made and the alleged "disruptive actions" engaged in by Plummer, Speaker Quinn did not even raise the conduct of Plummer or others as an issue, and, furthermore, the remarks were not made by Plummer in her official capacity as Chief of Staff to Councilmember Barron. Speaker Quinn, did this, it is believed, because she disagreed with the content of both the plaintiff's and Councilmember Barron's protected First Amendment expression.

In the early weeks of June, local New York City newspapers reported that defendant Quinn was exploring ways of firing Mrs. Plummer for the comments she reportedly made after the May 30th City Council meeting concerning the future political aspirations of Councilmember Leroy Comrie. On June 26, 2007, the New York Sun reported that defendant Quinn was planning to take imminent action against Mrs. Plummer and would have a meeting with her and Councilmember Barron on June 27th, before the stated meeting of the full council. Mrs. Plummer and Councilmember Barron were never contacted regarding a meeting with defendant Quinn and nothing was broached at the stated meeting of June 27th, where all three were present.

On June 28, 2007, at approximately 4:45 p.m. a letter, written on defendant Quinn's behalf by her chief of staff, Charles Meara, was hand-delivered to Plummer at her home. It stated, in part, that "*[A]s a result of your disruptive actions at the Council's Stated Meeting on May 30, 2007, and the threatening statements you made later that day regarding Councilmember Leroy Comrie, you are being suspended without pay from employment at the Council for a period of six weeks, from*

7