*June 29, 2007 to August 10, 2007*" (Exhibit B, complaint)(Emphasis supplied). No where in the letter does the author attempt to define what the alleged "disruptive actions" or "threatening statements" were. In addition, the letter set forth certain conditions for her continued employment should she agree to the terms set out in the June 28, 2007 letter. In particular, the letter states that Plummer "*must refrain from using threatening, intimidating, harassing, obscene or abusive language toward any Councilmember, Council staff or while acting in your official capacity, or be uncivil or discourteous toward any Councilmember, Council staff or while acting in your official capacity.*" Thus, by its explicit terms, Speaker Quinn seeks to regulate and monitor both the private conduct of the plaintiff going forward, as well as all conduct taken "while acting in your official capacity." The letter further stated that if Mrs. Plummer would be terminated if she failed to agree to the terms set out by 5 p.m on July 3, 2007. Finally, the letter offers no post-deprivation hearing or fact-finding process of any kind for Ms. Plummer to challenge the factual assertions made in the letter.

The plaintiff was never advised as to the details of her alleged "disruptive actions at the Council's Stated Meeting on May 30, 2007." The plaintiff was never formally presented with charges concerning her alleged acts, nor given a chance to explain, deny or challenge them prior to the discipline that the defendant now seeks to impose on her by fiat. Nor has the defendant offered any explanation of what conduct in the future would constitute, for example, "uncivil or discourteous" conduct toward Councilmembers.

    II.    **THE PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION**

The standards governing requests for preliminary injunctions are well-settled in the Second

Circuit. Where, as here, a moving party seeks a preliminary injunction to stay governmental action allegedly taken "in the public interest" the moving party must show "a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Deeper Life Christian Fellowship, Inc. v. Board of Eduction*, 852 F.2d 676, 679 (2d Cir. 1988). See also, *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2nd Cir. 2003); *Latino Officers Ass'n v. Safir*, 196 F.3d 458, 462 (2nd Cir. 1999); *New York Magazine v. Metropolitan Transp. Auth.*, 136 F.3d 123, 127 (2nd Cir. 1998); *Bray v. The City of New York*, 346 F.Supp. 2d 480, 486 (S.D.N.Y. 2004).

### A.   Irreparable Harm

Violations of First Amendment rights "are commonly considered irreparable injuries for the purposes of a preliminary injunction." *Latino Officers Ass'n*, 196 F.3d at 462, quoting *Bery v. City of New York*, 97 F.3d 689, 693 (2nd Cir. 1996), *cert denied*, 520 U.S. 1251. See also *Deeper Life Christian Fellowship, Inc.*, 852 F.2d 676, 679 ("'[The] loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Statharos v. New York City Taxi and Limousine Comm'n* 198 F.3d 317, 322 (2nd Cir. 1999).

Plaintiff also brings claims in this case for deprivations of due process and equal protection of the laws. In the instant case, given that the defendant failed to provide Plummer with notice and a hearing prior to the deprivation of her property interest in continued employment, and has failed to set forth any post-deprivation scheme by which the plaintiff can vindicate the violation of her rights, irreparable harm is assumed for these constitutional violations as well. See, e.g, *Stratharos*;

9

*Bray* 346 F.Supp.2d at 489-90.

### B. Likelihood of Success on the Merits

The plaintiff has a strong likelihood of success on the merits of her First, Fifth and Fourteenth Amendment claims.

#### 1. The Speaker Lacks the Power to Discipline the Plaintiff

Even before considering the merits of plaintiff's constitutional claims, it should be clear that the Speaker, quite simply, lacks the power to do what she intends to do now with respect to the plaintiff. As the documents which set forth the duties and responsibilities of the Speaker make clear, i.e., the City Charter and the Rules of the Council, she has no explicit or implicit power to impose discipline on a staff member of an individual Councilmember, particularly when that discipline is based on alleged conduct at a Stated Meeting of the Council at which the Speaker was not the presiding officer and where the discipline is based on protected First Amendment expressions by the plaintiff made in her individual capacity at a gathering of her political associates *after* the meeting was ended.

The City Charter says only the following: "The council shall consist of the public advocate and of fifty-one other members termed Councilmembers." New York City Charter, §22. The only mention in the City Charter of the Speaker is found in §44. That section of the Charter provides that the "council shall elect from among its members a speaker and such other officers as it deems appropriate." The only duties laid out in the Charter for the Speaker is that the speaker "shall preside over the meetings of the council." *Id.* There is no further delineation of the duties or responsibilities of the Speaker in the Charter, and certainly no provision of the City Charter which could be interpreted as giving to the Speaker the kind of powers she now seeks to discipline, suspend or

terminate staff members of individual City Councilmembers.

Nor can these powers be found in the Rules of the Council. The City Council has promulgated its own set of rules to govern its conduct. Chapter II of those rules sets forth the duties and responsibilities of the Speaker. These rules do not give the Speaker the power which she now seeks to exert, namely, to suspend and/or terminate staff of individual Councilmembers for conduct described in only the most vague and overbroad terms. Section 2.40 of the Rules of the Council sets forth the Speaker's duties with respect to personnel. These duties do not include the power to discipline staff of individual Councilmembers. Section 2.40 states in relevant part,

> The Speaker shall provide to each member an annual report detailing the names of all individuals receiving compensation for work performed for the Council, its members or any of its committees, the amount of such compensation, and a title and job description (including identification of the function or division of the Council to which the individual is assigned). Each report shall also set forth the amount of allowance in lieu of expenses received by each Committee chairperson.

Section 2.40 above sets forth the full extent of the powers given to the Speaker by the Rules of the Council with regard to personnel matters. It says nothing about the power to discipline, suspend or terminate a staff member of an individual Councilmember.

Each City Councilmember selects and hires his/her own staff, whose salary is paid from the budget allocated to that member. Neither the Speaker, nor any member of her staff, played a role in the selection, hiring or firing of Plummer or any other individual City Councilmember's staff.

During the debate and vote on May 30, 2007, spontaneous comments arose from all parts of the floor and gallery of the City Council chambers. Although the meeting was contentious and the comments reflected strongly held beliefs on both sides of the debate, at no time did the person acting as the presiding officer of the meeting, Public Advocate Gotbaum not Speaker Quinn, direct that the

Council Chambers be vacated, direct the Sergeant at Arms to remove anyone from the Council Chambers, or order the arrest of anyone for any comments or actions taken during the debate. Nor has the presiding officer of that meeting, Public Advocate Gotbaum, sought to discipline the plaintiff for her actions or conduct on May 30, 2007. Moreover, at no time during the meeting did Speaker Quinn request that any disciplinary or other actions be taken against Plummer or anyone else who was in attendance or who spoke at the meeting.

Since she was not the Presiding Officer of the May 30, 2007, Council meeting, Speaker Quinn lacked the power to enforce order and decorum, or breaches thereof, which might have occurred at the meeting. Rule 3.10 of the Rules of the Council state that the "presiding officer shall preserve order and decorum. In the event of disturbance or disorderly conduct in the Chamber, lobby or gallery, the presiding officer may cause the same to be cleared."

Moreover, whatever the extent of the Speaker's powers, they certainly do not extend to disciplining a staff member of an individual Councilmember for First Amendment activity engaged in by a staff member of an individual Councilmember in a location other than "the Chamber, lobby or gallery," in that staff member's individual capacity, the very conduct that the plaintiff is now being disciplined for.

2. **First Amendment Claims**

The statements allegedly made by plaintiff in her individual capacity after the Council meeting concerning her determination to end the political career of Councilmember Leroy Comrie are protected by the First Amendment to the Constitution.

It is well accepted that "[i]ndividuals do not relinquish their First Amendment rights by accepting employment with the government." *Latino Officers Ass'n*, 196 F.3d at 462-63, quoting

12

*Harman v. City of New York*, 140 F.3d 111, 117 (2nd Cir. 1998)(citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). *See also, Garcetti v. Ceballos,* 126 S.Ct. 1951, 1957 (2006). In evaluating a restriction on government employees' speech, a court must seek "to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.[1]

A two-step inquiry has emerged from *Pickering* and its progeny in evaluating whether a public employee has been retaliated against for engaging in protected speech. The two-step inquiry asks, first, "whether the employee spoke "as a citizen upon matters of public concern," as opposed to "as an employee upon matters only of personal interest." *Locurto v. Giuliani*, 447 F.3d 159, 172 (2nd Cir. 2006). There can be no real dispute, and there surely is no evidence to the contrary, that the comments attributed to Plummer were made in her capacity as a citizen upon matters of public concern. Thus, the plaintiff has satisfied the first step of the *Pickering* test.

The second step of the *Pickering* inquiry requires the courts to engage in a balancing test. "Once an employee demonstrates that her speech was the motivating factor behind an adverse employment action, the burden shifts to the Government "to make a substantial showing of likely interference.' " *Id.,* quoting *Jeffries v. Harleston*, 52 F.3d 9, 13 (2nd Cir. 1995). The adverse employment action at issue will only be upheld if: "(1) the employer's prediction of disruption is

---

[1] It should be noted, as well, that the preliminary injunction that the plaintiff seeks herein is one that seeks to maintain the status quo, rather than one that seeks to alter the status quo. Under the circumstances, the higher standard that is sometimes said to apply to requests for such mandatory injunctions does not apply, *see, e.g., Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2nd Cir. 2003), and the plaintiff herein need only show a likelihood of success on the merits. *See, Stauber v. City of New York*, 2004 WL 14538709, *23 (S.D.N.Y. July 16, 2004).

13

reasonable; (2) the potential disruptiveness is enough to outweigh the value of the speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech." *Id.*, at 172-73, quoting *Jeffries*.

As the Court stated in *Locurto* "[t]hese quidelines are, however, just that." *Id.*, at 173. "A single, mechanical test will not do for a salmagundi of challenges, involving both on- and off-duty speech, job-related and not, spoken in protest for laughs, or, as often, just because." *Id.* Thus, the courts must engage in a case by case analysis, paying particular attention to the factual context in which the issues have arisen, and guided by the overriding concern that the "Government not be permitted to "condition public employment on a basis that infringes the employee's constitutionally protected interests in freedom of expression." *Id.*, quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983). With these principles in mind, it is clear that the factual circumstances of this case show that the plaintiff has a strong likelihood of success on the merits of her First Amendment claim.

There can be no dispute that Speaker Quinn seeks to punish the plaintiff because of her speech. Clearly, the plaintiff's comments after the meeting, however offensive they might seem to some, are protected by the First Amendment. They were comments made by the plaintiff, on the plaza of City Hall, in her individual capacity as an activist for many decades, on a matter of current political interest in the City of New York. Moreover, although the defendant has sought to discipline the plaintiff for not only her comments after the meeting but her alleged disruptive behavior during the meeting, there is no question but that concerns speech as well, as there is no hint of an allegation that there was any physical disruption engaged in by the plaintiff on May 30, 2007. That Speaker Quinn has sought to buttress her attack on the plaintiff for her comments made after the meeting, clearly the gravamen of the defendant's grievance, only suggests how fragile her legal arguments

14

are for seeking to discipline the plaintiff for comments made after the meeting.

Whatever the substance of her comments which were made about Councilmember Comrie after the meeting, it is clear that they were made by the plaintiff in her individual capacity. When she made those comments, she was not speaking in her official capacity as the Chief of Staff for Councilmember Charles Barron. This distinction is important. In affirming disciplinary action against an assistant prosecutor in *Garcetti*, the Supreme Court relied on this very distinction. As the Court said, "[t]he controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy." *Garcetti*, 126 S.Ct. at 1959-60. "That consideration – the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case – distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." *Id.*, at 1960.

That distinction is vital here because the plaintiff was clearly not speaking after the meeting as a staff employee fulfilling her responsibilities to advise a member of the City Council. Rather, she was speaking in her individual capacity as a political activist of long standing in this City.

The nature of the comments allegedly attributed to the plaintiff following the City Council meeting does not deprive them of First Amendment protection. As the Supreme Court stated in *New York Times v. Sullivan* 376 U.S. 254, 271 (1964): "The constitutional protection does not turn upon the truth, popularity, or social utility of the ideas and beliefs which are offered . . . To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration." This principle applies with equal force to the facts of this case. Although the words attributed to Plummer may have perhaps been ill-chosen, everyone, including Comrie, understood that Plummer was referring to the future political aspirations of Comrie. Most importantly, Comrie did not understand

her words to be a threat to his physical safety and he so stated to the media when asked about this matter. Had he truly been threatened by such remarks, he could have initiated criminal process against Plummer, something he chose not to do. In fact, the only one truly exercised by these comments was Speaker Quinn, and we submit that she is simply using these comments in an opportunistic way to attack Councilmember Barron and his staff.

Other courts dealing with similar language have had no trouble finding that the speech was protected by the First Amendment. For example, the Supreme Court in *Rankin v. McPherson*, 483 U.S. 378 (1987), concluded that a data entry employee in a county constable's office who said of an attempt on President Reagan's life, "[I]f they go for him again, I hope they get him," was speaking on a matter of public concern because her comments were "made in the course of a conversation addressing the policies of the President's administration." *Id.*, at 381, 386. The Court made clear that "[t]he inappropriate or controversial character of a statement is irrelevant to the question [of] whether it deals with a matter of public concern." *Id.*, at 387. *See also, Melzer v. Bd. of Educ.*, 336 F.3d 185, 196 (2nd Cir. 2003).

The bottom line is that it cannot be said that Plummer's speech was "reasonably likely to disrupt the effective functioning," *Sheppard v. Beerman*, 317 F.3d 351, 355 (2nd Cir. 2003), of the Council such that the employee should either be suspended or fired "to prevent this disruption." *Id.* Only if it can be said that the government's interest in avoiding this disruption outweighs the employee's interest in free speech, can the restriction or punished be upheld. In this case, there is absolutely no evidence or indication that anything Plummer said, particularly given the context in which it was said and the clarification that immediately followed, disrupted or had the potential to disrupt the effective functioning of the Council. In fact, over the past month, just the opposite has

been the case. Plummer has continued to attend Council meetings in her capacity as Chief of Staff to Councilmember Barron at which Speaker Quinn and Councilmember Comrie have been present.

The Court's decision in *Pickering* is instructive here. There the relevant speech was a teacher's letter to a local newspaper addressing issues including the funding policies of his school board. *Id.*, at 566. "The problem in any case," the Court stated, "is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*, at 568. The Court in *Pickering* found that the teacher's speech neither was shown nor can be presumed to have "interfered with the regular operation of the schools generally." *Id.*, at 572-73. Thus, the Court concluded that "the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public." *Id.*, at 573.

In this case, Plummer's speech clearly has not interfered with the regular operation of the City Council. Thus, any balancing of the interest clearly weighs heavily in favor of the plaintiff and justifies the issuance of the preliminary injunction which she now seeks.

3. **Due Process Claims.**

The injuries that plaintiff will suffer if an injunction is not issued to stop the arbitrary and capricious action of the Speaker make it clear that the plaintiff has a likelihood of success on the merits of the due process claims. Due process protections extend to all property interests, without regard to the relative importance or necessity of the property at issue. *Fuentes v. Shevin*, 407 U.S. 67, 89-90 (1972). As the Supreme Court has articulated, even a temporary deprivation of property is sufficient for due process purposes. *Connecticut v. Doehr*, 501 U.S. 1, 12 (1983); *Fuentes*, 407

17

U.S. at 85. *See also, Krimstock v. Kelly*, 306 F.3d 40, 51 (2nd Cir. 1002). Here, of course, the deprivation is far from minor. Even if she accepts the draconian terms imposed of her by the Speaker for the continuation of her job after her six weeks suspension, she will still be deprived of six weeks of salary.

Because Plummer will not accept the suspension under any terms, she faces the permanent loss of her employment. This will be accomplished by the Speaker without affording the plaintiff either a pre- or post-deprivation hearing at which she might contest the factual and legal basis for the termination. This clearly runs afoul of the Fifth and Fourteenth Amendment guarantees of due process and equal protection.

"The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and an opportunity to meet it." *Matthew v. Eldridge* 424 U.S. 319, 348 (1976). As this Court has stated most recently, "The Fifth and Fourteenth Amendments generally require notice and a hearing prior to a property deprivation." *Bray*, 346 F.Supp.2d at 489, citing *United States v. James Daniel Good Reap Prop.*, 510 U.S. 43, 53 (1993).

The failure to provide a pre-deprivation notice and hearing will pass constitutional muster only on two grounds, both of which are not present in this case. First, the failure to provide a pre-deprivation notice and hearing will be allowed in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Bray*, 346 F.Supp.2d at 490 quoting *James Daniel Good*, 510 U.S. at 53. No such extraordinary circumstances are present in this case which would even remotely justify postponing notice and a hearing until after the suspension or termination here. It has been over a month since the alleged disruptive conduct and threatening statement by the plaintiff. Council business has continued and

the plaintiff has continued to participate in Council business in her capacity as Chief of Staff to Councilmember Charles Barron. Indeed, the plaintiff attended a Stated Meeting of the City Council on June 27, 2007, the day before she received the letter notifying her of her suspension and/or termination, at which the Speaker was present and nothing eventful took place. Moreover, notwithstanding the Speaker's views on this matter, Councilmember Comrie has stated publicly that he did not feel physically threatened by any comments made by the plaintiff, nor did he seek criminal process because he felt threatened.

Second, the failure to provide a pre-deprivation notice and hearing will be permitted only where a post-deprivation hearing of some kind is conducted. *Bray*, 346 F.Supp.2d at 490, quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2nd Cir. 1996) ("HANAC's [due process] claims can survive only if New York does not provide adequate postdeprivation procedures."). Here, the Speaker has provided no post-deprivation procedure by which the plaintiff can vindicate these serious and egregious violations of her constitutional rights. As the Speaker's letter states unequivocally, "[y]our failure to adhere to these requirements or the occurrence of any other misconduct will result in your immediate dismissal." (Letter from Meara to Plummer, June 28, 2007, p. 1).

Under these circumstances, the plaintiff has shown a clear likelihood of success on the merits of her Fifth and Fourteenth Amendment claims and this Court should grant the requested preliminary injunction on these grounds.

## CONCLUSION

Because the plaintiff faces irreparable injury, and because she clearly has demonstrated a likelihood of success on the merits of all of her constitutional claims, it is respectfully requested that

this Court grant the plaintiff's motion for a preliminary injunction enjoining the defendant from taking any steps to adversely affect her employment status as Chief of Staff to Councilmember Charles Barron.

Respectfully submitted by,

_____
ROGER S. WAREHAM (RW751)
394 Putnam Avenue
Brooklyn, NY 11216
Attorney for Plaintiff