UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

VIOLA PLUMMER,

                                  Plaintiff,        **LOCAL RULE 56.1**
                                                            **STATEMENT**
                -against-

CHRISTINE QUINN, Speaker of the City Council,    07 Civ. 6154 (WHP)
CITY OF NEW YORK,

                                  Defendants.

------------------------------------------------------------------ x

Pursuant to Local Rule 56.1 of the Civil Rules of this Court, defendants submit their statement of material facts as to which there is no genuine issue to be tried:

1. Plaintiff Viola Plummer ("plaintiff"), who self-identifies as a "US born female of African descent," brings this action against defendants Christine Quinn, Speaker of the New York City Council ("City Council") and the City of New York (collectively "defendants") pursuant to 42 U.S.C. §1983 and Articles 1, 8 and 11 of the New York State Constitution, alleging that plaintiff was suspended from her municipal employment with the City Council in retaliation for speech protected by the First Amendment of the United States Constitution.[1] Plaintiff also alleges that defendants violated plaintiff's rights to equal protection and substantive

---

[1] While plaintiff's Second Amended Complaint also contains references to the Voting Rights Act, such references are erroneous and plaintiff did not intend to include a Voting Rights Act claim in the Second Amended Complaint. See Exhibit B.

due process guaranteed by the Fourteenth Amendment of the United States Constitution and Articles 1, 8 and 11 of the New York State Constitution. See Exhibit "A."[2]

**A.  Background**

2. In September 2005, plaintiff Viola Plummer was appointed a Councilmanic Aide at the request of City Council Member Charles Barron. Plaintiff's title in Council Member Barron's office was Chief of Staff. See Exhibit "A" ¶10, Exhibit "L."

3. As a Councilmanic Aide, plaintiff was an employee at will. See Civil Service Law §35(c).

4. Prior to plaintiff's appointment, the position of Council Member Barron's Chief of Staff had been vacant for about a year. See Exhibit "D" at p. 9.

5. In January, 2006, Christine Quinn, a Council Member from New York County, was elected by her fellow Council Members to be Speaker of the New York City Council. See Exhibit "A" ¶8.

**B.  Viola Plummer's Disruptive Conduct at the Public Safety Committee Meeting**

6. Plaintiff was present at a joint hearing of the Public Safety and Civil Rights Committee. The topic of the meeting was racial profiling. See Exhibit "C" at pp. 19-20.

7. Plaintiff testified at her deposition that while Police Commissioner Raymond Kelly was speaking at the hearing she said "wow" and made a "gasp" sound. See Exhibit "C" at p. 22.

8. Plaintiff testified that Council Member Vallone, the Chair of the public safety committee addressed her and that plaintiff "was trying to read his lips." Plaintiff said that

---

[2] Unless otherwise specified, all references to exhibits are to those exhibits annexed to the Declaration of Eric Eichenholtz, dated October 30, 2007.

4

Chairperson Vallone was looking at her and seemed to be saying "out" but that she did not know exactly what he said. See Exhibit "C" at pp. 22-23.

9. Following the meeting, several Council Members told Charles Meara, Speaker Quinn's Chief of Staff, that plaintiff was disruptive at this meeting. See Exhibit "E" at p. 26.

10. Specifically, Council Members Vallone and Seabrook, who chaired the meeting, reported that plaintiff engaged in "verbal outbursts" during a Public Safety committee meeting. Council Member Vallone also reported that "when requests were made for the room to be quiet, they were not taken seriously." See Exhibit "E" at pp. 26-27; Exhibit "F" at pp. 26-31, 33.

11. Speaker Quinn testified at her deposition that she was informed that Chaiperson Vallone found it "difficult" to chair the meeting due to these outbursts. See Exhibit "F" at p. 33.

C.  **Plaintiff's Disruptive Behavior at the May 30, 2007 Stated Meeting of the City Council**

12. The New York City Council held a Stated Meeting on May 30, 2007. See Exhibit "M."

13. Prior to this May 30, 2007 stated meeting, Speaker Quinn had learned about plaintiff's conduct at the Public Safety and Civil Rights Committee meeting. Speaker Quinn also testified at her deposition that members of the Black, Latino and Asian Caucus had also expressed a "general concern" about plaintiff's behavior. See Exhibit "F" at pp. 34, 43-44.

14. Among the items to be discussed at the May 30, 2007 meeting was a bill to rename certain streets throughout the City of New York in honor of various individuals. See Exhibit "N."

15. The Council was also to consider an amendment by Council Member Albert Vann to co-name Gates Avenue in Brooklyn after Sonny Carson. The proposal to co-name Gates Avenue after Mr. Carson had previously been removed from the street re-naming bill by the Council committee on Parks and Recreation. See Exhibit "A."

16. Sonny Carson was "a very, very close comrade, friend and colleague" of plaintiff. See Exhibit "C" at p. 35.

17. At the May 30, 2007 meeting, Council Member Albert Vann, pursuant to the rules of the Council, offered an amendment to the Sonny Carson street co-naming proposal in the bill. See Exhibit "A" ¶26.

18. Speaker Quinn testified that she expected that Council Member Vann's amendment would generate a tense debate that could cause disruption. Accordingly, prior to the meeting, Speaker Quinn met with Public Advocate Gotbaum and

> Discussed with [the Public Advocate] that my desire was to do everything in my power to not – to try to keep order in the chamber but not have to clear the chamber. I wanted to avoid, at all costs, having to clear the balcony of the public.

See Exhibit "F" at pp. 105-106; Exhibit "G" at pp. 15-16.

19. Pursuant to Rule 3.30 of the Rules of the City Council, the Speaker is the presiding officer of the City Council. See Exhibit "O."

20. Speaker Quinn has designated Public Advocate Gotbaum to preside over Stated Meetings of the Council. Public Advocate Gotbaum serves in this capacity at the pleasure of the Speaker. Id.; see also Exhibit "F" at pp. 84-86.

21. Speaker Quinn testified that "we would do our best to try to keep the meeting going and not have to recess at any period of time to remove anyone from the chambers." Id. at p. 106.

22. Carl D'Alba, the Director of Security for the New York City Council, testified that "as much as possible, [the Speaker] did not want anyone removed." See Exhibit "H" at pp. 10-11.

23. As the Chief of Staff to Council Member Barron, plaintiff sat on the floor of the City Council, to the right of Council Member Barron. See Exhibit "C" at p. 32.

24. Pursuant to City Council Rule 8.20 only staff and guests of the Speaker sit on the floor of the Council. The general public sits in the gallery. See Exhibit "O."

25. After Council Member Vann presented the amendment, several council members spoke concerning the amendment and to explain their votes. See Exhibit "M."

26. Plaintiff yelled during the course of this debate. See Exhibit "C" at p. 35.

27. Plaintiff yelled "liar" while Speaker Quinn was discussing Mr. Carson. See Exhibit "C" at p. 36; Exhibit "A" ¶30; Exhibit "P."

28. Plaintiff also yelled "liar" during Council Member Nelson's comments. Id.; see also Exhibit "H" at p. 15; Exhibit "P."

29. The recordings of the May 30, 2007 stated meeting also contain similar comments being made during the speeches of Council Members D'Blasio and Koppel. See Exhibit "P"; Exhibit "Q" at time index 44:20 through 46:30.

30. Charles Meara testified that he heard plaintiff disrupt the meeting several times, yelling "liar" and "shut up." See Exhibit "E" at pp. 18-19.

31. Chief of Security D'Alba testified that plaintiff was "yelling out loud, very, very boisterous, interrupting the speakers that were on the floor during their statements." See Exhibit "H" at pp 15.

32. Wayne Kwadler, a Senior Advisor to Speaker Quinn who was present at the meeting testified that "I believe [plaintiff] said 'liar' several times and . . 'That is not true.'" Senior Advisor Kwadler also heard plaintiff calling people names such as "cracker." See Exhibit "I" at pp. 7-8; see also Exhibit "Q" at time index 45:34 through 45:35.

33. Plaintiff testified at her deposition that "cracker" is a term she uses when she is "quite angry," but that she cannot specifically recall if she used that word at the May 30, 2007 Stated Meeting. See Exhibit "C" at pp. 39-40.

34. Public Advocate Gotbaum testified that she heard "yelling" from the floor[3] of the Council from the direction that plaintiff was seated. Public Advocate Gotbaum also testified that the yelling appeared to be coming from the same person. See Exhibit "G" at p. 20-21, 24.

35. As a result, the Public Advocate said "quiet please" and banged the gavel several times. Id.; see also Exhibits "M," "P" and "Q."

36. Plaintiff admitted at her deposition that she heard either Public Advocate Gotbaum or Chief of Security D'Alba call for quiet during the meeting. See Exhibit "C" at pp. 41-42.

37. Plaintiff testified that her behavior at the May 30, 2007 meeting was "disruptive." See Exhibit "C" at p. 68.

38. Public Advocate Gotbaum testified that it was "very unusual" to have someone on the floor of the Council disrupt the meeting and could not recall another occasion in which such disruption has happened before. See Exhibit "G" at pp. 21-22.

---

[3] In her deposition testimony, the Public Advocate explained that she uses the word "gallery" to refer to the floor of the City Council and the word "balcony" to refer to the elevated balcony where the public sits. See Exhibit "G" at p. 17. Because both the floor and the balcony can be referred to as a "gallery," the defendants will uniformly use the terms "floor" and "balcony" in this motion.

39. Speaker Quinn testified that it was "atypical" for noise to be coming from the floor of the Council during her speeches. See Exhibit "F" at p. 108.

40. Speaker Quinn testified that:

> The actions of Ms. Plummer did not prevent the vote form occurring, but they were disruptive and made it harder for the process of the Council to occur.

Id. at p. 111.

### D.  Plaintiff's Inappropriate Remarks Following the May 30 Stated Meeting

41. After the vote on the amendment, plaintiff went to the courtyard outside of City Hall and made statements to a group of persons, including members of the media, concerning the vote. During that discussion, plaintiff specifically mentioned Leroy Comrie, who had abstained from the vote. See Exhibit "C" at pp. 46-47.

42. In her second amended complaint, plaintiff acknowledged that she said, amongst other things, that Council Member Comrie's "aspiration to be Queens Borough President would be over even if it meant assassinating 'his ass.'" See Exhibit "A" ¶33.

43. On May 30, 2007, Speaker Quinn was first alerted to plaintiff's remark by a member of her press staff. After she learned about the alleged remark, Speaker Quinn "wanted [her staff] to get an audio recording or a confirmation of that." See Exhibit "F" at p. 112.

44. Speaker Quinn was thereafter provided with an audio recording. See Exhibit "F" at p. 113.

45. In the audio recording provided to Speaker Quinn, plaintiff can be heard saying "to assassinate Leroy Comrie's ass, that's what I said, means his whole stuff, his whole run for Queens Borough President, his whole get the people to support him." See Exhibit "R."

46. Plaintiff acknowledged at her deposition that the voice on the recording was her own and that she made the comments contained in the audio recording. See Exhibit "C" at p. 52-54.

47. Council Member Comrie testified at his deposition that:

> I felt physically threatened by the fact that that got in the front page of the paper, that we've had other incidence in the Council where members have been assaulted and one members was even murdered in the Council.

See Exhibit "J" at p. 47.

48. Speaker Quinn testified that she found plaintiff's comments to be "outrageous and unacceptable." The Speaker testified that "saying that in front of a crowd of people particularly when you are saying it outside of a building where an assassination occurred, it is very, very worrisome and troublesome." See Exhibit "F" at p. 121.

49. Former City Council Member James Davis was shot and killed in the balcony of the City Council in 2003. See Exhibit "C" at p. 55.

50. Chief of Staff Meara testified that the concern about the remark:

> Was broader than Viola Plummer. I think the concern was that [May 30] was a very emotional day, there were very high passions and no one really knew who Viola was saying it to. So it wasn't simply a question of whether Viola was going to do something, it was a question of who might hear the word assassinate attached to Councilman Comrie...

See Exhibit "E" at pp. 30-31.

E.    **The Aftermath of plaintiff's disruptive conduct**

51. On June 1, 2007, two days following plaintiff's actions during and after the stated meeting of the City Council, Charles Barron stated to the media that "I'm so proud of [plaintiff] I might giver her a raise." See Exhibit "D" at p. 21.

52. Speaker Quinn testified that following the May 30, 2007 Stated Meeting, she had meetings with staff members and Council Members to assess how to address plaintiff's disruptive conduct. See Exhibit "F" at pp. 121-122.

53. Speaker Quinn explained the need for such meetings at her deposition:

> ...disrupting committee meetings, disrupting a Stated Meeting, making, you know, incredibly inappropriate comments about a sitting councilmember, none of that had ever happened before in the New York City Council. It was unprecedented.
>
> And when you have unprecedented things occur, you have to assess the situation more thoroughly. And we were unfortunately in an unprecedented waters.

See Exhibit "F" at p. 47.

54. Additionally, Speaker Quinn requested that the Office of the New York City Council's General Council research whether the speaker has the authority to discipline a member of a Council Member's staff for misconduct. See Exhibit "F" at pp. 48-49.

55. Following these meetings, the Speaker determined that she could, and would, take disciplinary action against plaintiff. See Exhibit "F" at pp. 125-127.

F.    **Plaintiff is suspended for her disruptive behavior**

56. On June 28, 2007, Chief of Staff Meara wrote a letter plaintiff notifying her that she was "suspended without pay from employment at the Council for a period of six weeks, from June 29, 2007, through August 10, 2007." See Exhibit "S."

11

57. Meara wrote the letter on behalf of, and with the approval of the Speaker. See Exhibit "E" at p. 53.

58. Council Member Barron ripped up the original copy of the June 28, 2007 suspension letter at a press conference with the media. See Exhibit "D" at p. 28.

59. Plaintiff thereafter filed the instant action and, after discussions with the Court, plaintiff was provided a revised letter, dated July 5, 2007. See Exhibit "T."

**G.    Plaintiff refuses to agree to abide by the terms of the July 6, 2007 letter and is terminated from her employment at the City Council**

60. The July 5, 2007 letter stated:

> As a staff member and employee of the Council, you may not engage in disorderly or disruptive conduct at Council Stated and Committee meetings and you must abide by any and all directions of the Presiding Officer of such meetings either to the audience or to you yourself. You must also follow the sergeant-at-arms' instructions to maintain order and decorum. Further, you must refrain from using language towards any Council Member or Council staff that threatens bodily harm.

Id.

61. Plaintiff was required to acknowledge and agree to abide by these terms in order to return from suspension. The letter stated that should plaintiff refuse to sign the letter and acknowledge and agree to not engage in the conduct outlined therein, plaintiff would be terminated. Id.

62. Plaintiff was given until 5:00 PM on July 6, 2007 to sign the letter. Id.

63. Plaintiff decided not to sign the letter. See Exhibit "C" at pp. 66-67.

64. As a result of plaintiff's refusal to sign the July 5, 2007 letter, plaintiff's employment with the New York City Council was terminated, effective July 9, 2007. See Exhibit "U."

65. Plaintiff's termination was authorized by Speaker Quinn. See Exhibit F at p. 132; Exhibit "V."

66. At her deposition, plaintiff reiterated her belief that she had a "right" not to "be quiet" during the Council Meeting when, in her view, the Council Members were making statements that were not true concerning her friend, Sonny Carson. See Exhibit "C" at pp. 37-39.

## H.  Plaintiff's Claims of Race Discrimination

67. Plaintiff is alleging in this action that she was terminated based on her race. See Exhibit "A."

68. At her deposition, plaintiff testified that she bases her race discrimination claim on the historical subjection of Black people as well as the fact that she is Black and that Speaker Quinn is White. See Exhibit "F" at p. 76-77.

Dated:    New York, New York
          October 30, 2007

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                Attorney for Defendants
                100 Church Street, Room 2-104
                New York, New York 10007
                (212) 788-0885

By: _____
                Eric Eichenholtz (EE3286)
                Assistant Corporation Counsel

Docket No. 07 Civ. 6154 (WHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLA PLUMMER,

                                  Plaintiff,

-against-

CHRISTINE QUINN, Speaker of the City Council,
CITY OF NEW YORK,

                                  Defendants.

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Paul Marks, James M. Lemonedes*
*and Eric Eichenholtz*
*Tel: (212) 788-0885*
*Matter No. 2007-021010*

*Due and timely service is hereby admitted.*

*New York, N.Y. .................................., 200......*

*.................................................. Esq.*

*Attorney for..................................*