Docket No.  07 Civ. 6154 (WHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLA PLUMMER,

                                                                    Plaintiff,

                              -against-

CHRISTINE QUINN, Speaker of the City Council,
CITY OF NEW YORK,

                                                                    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Paul Marks*
*James M. Lemonedes*
*Eric Eichenholtz*

*Tel:  (212) 788-0885*
*Matter No. 2007-021010*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT

       POINT I

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT CONCERNING PLAINTIFF'S
            FIRST AMENDMENT CLAIMS............................................................ 4

       POINT II

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT CONCERNING PLAINTIFF'S
            FOURTEENTH AMENDMENT EQUAL
            PROTECTION CLAIM....................................................................... 13

       POINT III

            DEFENDANTS ARE ENTITLED TO SUMMARY
            JUDGMENT ON PLAINTIFF'S FOURTEENTH
            AMENDMENT SUBSTANTIVE DUE PROCESS
            CLAIM.......................................................................................... 15

       POINT IV

            DEFENDANT QUINN IS ENTITLED TO
            QUALIFIED IMMUNITY ................................................................... 17

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Pages</u>

<u>423 South Salina Street, Inc. v. City of Syracuse,</u>
    68 N.Y.2d 474 (1986),
    <u>cert. denied</u>, 481 U.S. 1008 (1987) ....................................................................4

<u>Blackman v. New York City Transit Authority,</u>
    491 F.3d 95 (2d Cir. 2007)............................................................................5, 11

<u>Blum v. Schlegel,</u>
    18 F.3d 1005 (2d Cir. 1994)................................................................................4

<u>Cleburne v. Cleburne Living Center, Inc.,</u>
    473 U.S. 432, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)......................................13

<u>Connick v Myers,</u>
    461 U.S. 138 (1983)......................................................................................4, 5

<u>Edwards v. City of New York,</u>
    2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. December 16, 2005) ...........................14

<u>Grant v. Wallingford Board of Education,</u>
    195 F.3d 134 (2d Cir. 1999)..............................................................................13

<u>Hunter v. Bryant,</u>
    502 U.S. 224, 112 S. Ct. 534 (1991).....................................................................18

<u>James v. New York Racing Ass'n,</u>
    233 F.3d 149 (2d Cir. 2000)..............................................................................13

<u>Jefferies v. Harelston,</u>
    52 F.3d 9 (2d Cir 1995).......................................................................................5

<u>Kia P. v. McIntrye,</u>
    235 F.3d 749 (2d Cir. 2000)..............................................................................16

<u>Lennon v. Miller,</u>
    66 F.3d 416 (2d Cir. 1995)...............................................................................19

<u>Lewis v. Cowen,</u>
    165 F.3d 154 (2d Cir. 1999)................................................................................5

<u>Lonegan v. Hasty,</u>
    436 F. Supp. 2d 419 (E.D.N.Y. 2006) ...............................................................16

**<u>Cases</u>**                                                                                          **<u>Pages</u>**

<u>Malone v. City of New York</u>,
    2006 U.S. Dist. LEXIS 61866 (E.D.N.Y. August 30, 2006) ...................................................16

<u>Markovic v. New York City School Construction Authority</u>,
    2002 U.S. Dist. LEXIS 214 (S.D.N.Y. January 8, 2002) .......................................................4

<u>McDonnell Douglas Corp. v. Green</u>,
    411 U.S. 792 (1973)..............................................................................................................13

<u>Melzer v. Bd. of Educ. of the City School Dist. of the City of N.Y.</u>,
    336 F.3d 185 (2d Cir. 2003),
    <u>cert. denied</u>, 540 U.S. 1183 (2004) ......................................................................................8

<u>Mitchell v. Forsyth</u>,
    472 U.S. 511 (1985)..............................................................................................................18

<u>Mount Healthy City School Dist. Bd. of Educ. v. Doyle</u>,
    429 U.S. 274 (1977)................................................................................................................4

<u>Neilson v. D'Angelis</u>,
    409 F.3d 100 (2d Cir. 2005)..................................................................................................15

<u>Peralta v. Rockefeller Univ.</u>,
    2005 U.S. Dist. LEXIS 10458 (S.D.N.Y. May 27, 2005)................................................. 13-14

<u>Pickering v. Board of Education</u>,
    391 U.S. 563 (1968)......................................................................................................4, 8, 11

<u>Rankin v. McPherson</u>,
    483 U.S. 378 (1987)................................................................................................................4

<u>Richardson v. Newburgh Enlarged City Sch. Dist.</u>,
    984 F. Supp. 735 (S.D.N.Y. 1997) ......................................................................................14

<u>Saucier v. Katz</u>,
    533 U.S. 194 S. Ct. 2151 (2001)..........................................................................................18

<u>Scott v. Harris</u>,
    ___ U.S. ___, 127 S. Ct. 1769 (2007)............................................................................. 17-18

<u>Sheppard v. Beerman</u>,
    94 F.3d 823 (2d Cir. 1996)................................................................................................5, 19

**Cases**                                                                                                                    **Pages**

St. Mary's Honor Ctr. v. Hicks,
    509 U.S. 502 (1993).........................................................................................................................13

Texas Dept. v. Community Affairs v. Burdine,
    450 U.S. 248 (1981).........................................................................................................................13

Velez v. Levy,
    401 F.3d 75 (2d. Cir. 2005)..................................................................................................... 16-17

Washington Square Post No. 1212 v. Maduro,
    907 F.2d 1288 (2d Cir. 1990)..........................................................................................................18

Washington v. National Railroad Passenger Corporation,
    2003 U.S. Dist. LEXIS 16104  01 Civ. 4201 (BSJ) (SDNY Sept 12, 2003)...................... 9-10

Waters v. Churchill,
    511 U.S. 661 (1994)..........................................................................................................................5

**Statutes**

N.Y. Civ. Prac. L. & R. § 7803(3) .................................................................................................12

General Municipal Law § 50-i ........................................................................................................4

New York Civil Service Law §35(c) .............................................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

VIOLA PLUMMER,

                              Plaintiff,

            -against-                              07 Civ. 6154 (WHP)

CHRISTINE QUINN, Speaker of the City Council,
CITY OF NEW YORK,

                              Defendants.

------------------------------------------------------------------------ x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Viola Plummer ("plaintiff"), the former Chief of Staff to Charles Barron, a member of the New York City Council ("City Council"), who self-identifies as "US born female of African descent" (see Exhibit "A", Second Amended Complaint at ¶ 1), brings this action against defendants Christine Quinn, Speaker of the City Council and the City of New York (collectively "defendants") pursuant to 42 U.S.C. §1983 and Articles 1, 8 and 11 of the New York State Constitution, alleging that defendants suspended her and terminated her employment with the City Council in retaliation for speech protected by the First Amendment of the United States Constitution. Plaintiff also alleges that defendants violated plaintiff's rights to equal protection and substantive due process guaranteed by the Fourteenth Amendment of the United States Constitution and Articles 1, 8 and 11 of the New York State Constitution.

Defendants now move for summary judgment, dismissing plaintiff's second amended complaint in its entirety. The second amended complaint alleges three claims: (1)

plaintiff was suspended and ultimately terminated in retaliation for her exercise of her First Amendment right to free speech, (2) plaintiff was terminated for discriminatory reasons in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and (3) plaintiff's termination violated her right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiff also brings the same claims under parallel provisions of the New York State constitution. Summary judgment is appropriate in this case because, as set forth herein, the undisputed record before this Court demonstrates that none of the constitutional rights identified by plaintiff were violated in connection with her termination. Moreover, as set forth herein, defendant Quinn is entitled to qualified immunity because Speaker Quinn did not violate any clearly established constitutional rights and her actions were objectively reasonable.

## STATEMENT OF FACTS

The Court is respectfully referred to defendant's Statement of Undisputed Facts Under Local Civil Rule 56.1, dated October 30, 2007 ("56.1 Statement"), the Declaration of Eric Eichenholtz, dated October 30, 2007 ("Eichenholtz Decl.") and the supporting evidence cited to therein for a statement of pertinent and material facts.

# ARGUMENT

## POINT I

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT CONCERNING PLAINTIFF'S FIRST AMENDMENT CLAIMS

To prevail on a First Amendment retaliation claim,[1] a public employee must establish: (1) that the speech at issue was protected; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected speech and the adverse employment action. Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); see also Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87 (1977). In Pickering v. Board of Education, 391 U.S. 563 (1968), the Supreme Court established a two-part balancing test for determining whether speech is constitutionally protected. A court must first decide whether the speech addresses a matter of public concern and once the Court has determined that the plaintiff's speech addresses an issue of public concern, the inquiry then becomes whether the speech was disruptive. Pickering, 391 U.S. at 568; see also Connick v Myers, 461 U.S. 138, 146 (1983); Rankin v. McPherson, 483 U.S. 378, 384 (1987). These issues are issues of law for the

---

[1] In her Second Amended Complaint, in addition to alleging violations of the federal constitution, plaintiff also alleges that defendants have violated the parallel provisions of the New York State Constitution. Because the applicable legal analysis concerning those provisions essentially mirror their federal counterparts, those claims fail for the reasons stated herein. See e.g. Markovic v. New York City School Construction Authority, 2002 U.S. Dist. LEXIS 214 at *27 (S.D.N.Y. January 8, 2002). Moreover, New York state law requires a plaintiff to plead and prove that she filed a notice of claim within 90 days of the alleged unlawful act in order to assert a claim for an alleged violation of the state constitution. See 423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474, 489 n.5 (1986), cert. denied, 481 U.S. 1008 (1987) (holding that the notice of claim provision of General Municipal Law § 50-i was applicable to a cause of action for "constitutional torts" in violation of the New York State Constitution). Plaintiff has done neither in this case, and therefore her claims based on the New York State Constitution must be dismissed.

court to determine. Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999); see also Connick, 461 U.S. at 148, n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact.").

When a plaintiff's speech on a matter of public concern is sufficiently disruptive to government operations so that the disruption outweighs the value of the speech, a public employer may terminate the employee. See Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003); Blackman v. New York City Transit Authority, 491 F.3d 95 (2d Cir. 2007). Even if there is no actual disruption, the government employer may act to prevent potential disruption if the employer reasonably believes that the employee's speech threatens to interfere with government operations. Waters v. Churchill, 511 U.S. 661, 672-74 (1994); Jefferies v. Harelston, 52 F.3d 9, 12 (2d Cir 1995). Indeed, "the extent of the injury caused by the employee's speech need not be actual; rather, the government's burden is just to show that the speech threatened to interfere with government operations." Jefferies, 52 F.3d at 12 (citing, Waters, 511 U.S. at 673-74). Moreover, The Court has granted "substantial weight to government employers' reasonable predictions of disruption, even  when the speech involved is on a matter of public concern." Waters, 511 US at 673; see Jefferies, 52 F.3d at 12.

Defendants do not dispute that plaintiff's suspension and ultimate discharge are adverse employment actions. However, summary judgment should be granted in favor of defendants because: (a) plaintiff acknowledged that her conduct during the May 30, 2006 Stated Meeting was disruptive (see Exhibit "C", Plummer Depo. at pp. 35-39, 68); and (b) the employer had a reasonable belief that plaintiff's speech threatened to interfere with government operations (see Exhibit F Quinn Depo. at pp. 47, 121-22).

Plaintiff has admitted that her speech and conduct during the May 30, 2006 Stated Meeting was disruptive. Exhibit "C", Plummer Depo. at pp. 35-39, 68. She admitted that while

the Speaker and Council Member Nelson each had the floor and were debating the issues concerning the street co-naming, she interrupted their comments by yelling "liar" and "you're lying." See Exhibit "C", Plummer Depo. at pp. 35-39. Indeed, plaintiff specifically testified:

> Q.   So, let me just run through a couple of things. You're saying that at no time during your employment with the council did you -- at no time during your employment with the council did you engage in disorderly or disruptive conduct at a stated?
>
> A.   No, we are clear that the May 30th meeting indeed I yelled out twice and called Christine Quinn a liar and the other Council Member. May 30th.
>
> Q.   Did you consider that disorderly or disruptive?
>
> A.   Disruptive.

Exhibit "C", Plummer Depo. at p. 68. Other witnesses confirmed that plaintiff had disrupted the May 30th Stated Meeting by yelling while Quinn and other Council Members had the floor to debate the issues.[2] See Exhibit "E", Meara Depo. at pp. 18-19; Exhibit "G", Gotbaum Depo. at pp. 20-21, 24; Exhibit "H", D'Alba Depo. at p. 15; Exhibit "I", Kwadler Depo. at pp. 7-8. In fact, the Public Advocate, Betsy Gotbaum, called for quiet several times during the May 30th Stated Meeting. Exhibit "G", Gotbaum Depo. at pp. 20-21; Exhibit "C", Plummer Depo. at pp. 41-42. At her deposition, the Public Advocate explained that it was very unusual to have

---

[2] Shortly before the May 30, 2006 Stated Meeting, the Speaker was advised that plaintiff had disrupted a Public Safety Committee meeting. Council Members Vallone and Seabrook, who co-chaired that meeting, reported that plaintiff engaged in "verbal outbursts" during the meeting, and Council Member Vallone explained that "when requests were made for the room to be quite, they were not taken seriously." See Exhibit "E", Meara Depo. at pp. 26-27; Exhibit "F", Quinn Depo. at pp. 26-31, 33. Council Member Vallone further informed Speaker Quinn that he found it "difficult" to chair the meeting due to these outbursts. See Exhibit "F", Quinn Depo. at p. 33. During her deposition, plaintiff acknowledged that while Police Commissioner Raymond Kelly was addressing the committee she interrupted his speech and she saw Council Member Vallone looking at her and speaking to her, apparently asking her to get out. See Exhibit "C", Plummer Depo. at p. 23.

someone on the floor, where Plummer was seated during the May 30th Stated Meeting[3], disrupt the meetings, and Ms. Gotbaum could not recall another occasion in which such disruption had occurred. Exhibit "G", Gotbaum Depo. at pp. 21-22. Speaker Quinn also confirmed that such disruption was "atypical" and that Plummer's conduct was "disruptive and made it harder for the process of the Council to occur." Exhibit "F" Quinn Depo. at pp. 108, 111.

Defendants could reasonably expect that plaintiff's inflammatory comments made immediately after the May 30th Stated Meeting, could cause even further disruption. Following the May 30th Stated Meeting, plaintiff addressed a gathering of people, including some newspaper reporters, and voiced her anger at the vote concerning the co-street naming. Significantly, plaintiff admits that she addressed this crowd as a "well known political activist and community organizer." Exhibit "A", Second Amended Complaint at ¶ 32. Plaintiff was particularly angry at the abstention of Council Member Leroy Comrie, and made a comment about assassinating "his ass." Exhibit "A", Second Amended Complaint at ¶ 33. When Speaker Quinn was advised of Plaintiff's "assassination" statement concerning Council Member Comrie, she reasonably requested confirmation that plaintiff had made such a comment and was provided with an audio recording in which plaintiff can be heard saying ""to assassinate Leroy Comrie's ass, that's what I said, means his whole stuff, his whole run for Queens Borough President, his whole get the people to support him."[4] Exhibit "F", Quinn Depo. at p. 113; Exhibit "R", audio recording.    Speaker Quinn considered such comments about a Council Member to be

---

[3]    Pursuant to City Council Rule "8.20" only staff and guests of the Speaker are permitted to sit on the floor during a Stated Meeting. See Exhibit "O." It is undisputed that plaintiff was sitting on the floor during the May 30th Stated Meeting as Council Member Barron's Chief of Staff.

[4]    Plaintiff acknowledged at deposition that the voice on the audio recording was her own and that she made the comments contained in the audio recording. Exhibit "C", Plummer Depo. at pp. 52-54.

- 7 -

"outrageous and unacceptable." Exhibit "F", Quinn Depo. at p. 121.  Moreover, the Speaker explained that "saying that in front of a crowd of people particularly when you are saying it outside of a building where an assassination occurred, it is very, very worrisome and troublesome." Id.  After hearing the recording and discovering that Plummer's comments had been reported in the newspapers, Council Member Comrie had felt "physically threatened", particularly because "we've had other incidents in the Council where members have been assaulted and one members was even murdered in the Council." Exhibit "J", Comrie Depo. at p. 47.

Courts look to a number of factors to determine whether the speech has, or is likely to, cause disruption including the "manner, time, and place" at which the speech occurred. Melzer v. Bd. of Educ. of the City School Dist. of the City of N.Y., 336 F. 3d 185, 197 (2d Cir. 2003), cert. denied, 540 U.S. 1183 (2004).  For example, when a disruptive activity occurs in the workplace as opposed to on the employee's own time, the government is more likely to meet its burden. Id.  Second, the content of the disruptive speech is considered such that "the more [the] speech touches on matters of public concern, the greater the level of disruption the government must show." Id.  Finally, the "nature of the employee's responsibilities" are a significant consideration in the balancing test as "the level of protection afforded to an employee's activities will vary with the amount of authority and public accountability the employee's position entails." Id.  Overall, a court must assess "the extent of the disruption caused by the employee's speech on workplace discipline, harmony among co-workers, working relationships, and the employee's job performance, and determine whether the disruption justifies the employer's attempt to stifle the employee's expressive activity." Pickering, 391 U.S. at 567-573.

The fact that plaintiff has acknowledged that her conduct during the May 30th Stated Meeting was disruptive demonstrates that plaintiff did not engage in protected speech and summary judgment should be granted to defendants. Obviously, such disruption occurred at plaintiff's workplace, as she was on the Council Floor in her capacity as Chief of Staff for Council Member Barron.[5] See Exhibit "C", Plummer Depo. at p. 32. Moreover, plaintiff's position as Council Member Barron's Chief of Staff, would require a significant amount of authority and public accountability. The most compelling factor, however, is plaintiff's admission that her conduct was disruptive. In a similar situation, a Court in this District concluded that such an admission (that the conduct at issue was disruptive) would preclude any need for a factual determination on the issue as to whether the speech at issue had the potential for disruption. Washington v. National Railroad Passenger Corporation, 2003 U.S. Dist. LEXIS 16104 at *19-20, 01 Civ. 4201 (BSJ) (SDNY Sept 12, 2003).

Washington is instructive. Washington was a customer service representative for Amtrack, who observed what she believed to be racial mistreatment by an Amtrack Police Officer of certain African-American teenagers in the main concourse of the station. Washington thereafter confronted the Amtrack officer and a dispute in the concourse ensued. Washington was brought up on charges and was found to have violated Amtrak's Rules of Conduct by using "vulgar and profane language" toward the Amtrack officer, calling him a "racist," and "interfering with [his] duties as a Police Officer." Washington, 2003 U.S. Dist. LEXIS 16104 at *5-6. After Washington was dismissed she initiated an action claiming First Amendment retaliation. The District Court found that the speech at issue was a matter of public concern, but that "plaintiff's speech was disruptive and this potential for disruptiveness did outweigh the

---

[5]    See footnote 3, above.

value of her speech." Id. at * 14, 19. The court further specifically considered whether there could be any factual dispute concerning the speech at issue and/or the potential for disruption. The Court observed because the employer reasonably believed the Amtrack officer's "version of events and the plaintiff does not dispute that under this version, the speech would have the potential to cause disruption" there was no factual dispute which would preclude summary judgment[6]. Id. at *19-21. The same analysis should be applied to the instant matter: as plaintiff acknowledged that her conduct at the May 30th Stated Meeting was disruptive, there can be no factual dispute on this issue, and summary judgment should be granted for defendants.[7]

In addition to this clear disruption at the May 30th Stated Meeting, defendants reasonably concluded that plaintiff's statements made to the gathering outside City Hall immediately after that meeting threatened further disruption. Plaintiff again admitted that she told this crowd that Council Member Comrie's abstention was so serious that it warranted the end of his political career "even if it meant assassinating 'his ass.'" Exhibit "A", Second

---

[6]  The District Court further observed that given Washington's refusal to apologize for her disruptive conduct and her prior disciplinary record in calling a customer a "stupid idiot", it was "reasonable for the defendant to conclude that plaintiff would engage in such disruptive behavior in the future as well." Id. at *20. Plaintiff herein refused to sign the letter confirming that she would not engage in disruptive behavior in the future (see Exhibit "C", Plummer Depo. at pp. 66-67), and she had engaged in similar disruptive conduct at the Public Safety meeting (see footnote 2, above) and made inappropriate comments following the May 30th Stated Meeting concerning Council Member Comrie. Moreover, when plaintiff was asked at her deposition whether her actions at the May 30th Stated Meeting as "appropriate" or "justified," plaintiff provided the non-responsive answer that she could not sit quietly and listen to "lies" being told about Sonny Carson, which clearly indicates plaintiff is of the belief that her disruption of the meeting was warranted. See Exhibit "C," Plummer Depo at pp. 37-39. In light of these factors, the defendants reasonably believed that plaintiff could cause further disruptive behavior in the future as well.

[7]  The testimony of the Public Advocate and other witnesses further confirms that plaintiff's conduct at the May 30th Stated Meeting was disruptive. See Exhibit "G", Gotbaum Depo. at pp. 20-21, 24; see also Exhibit "E", Meara Depo. at pp. 18-19; Exhibit "H", D'Alba Depo. at p. 15; Exhibit "I", Kwadler Depo. at pp. 7-8.

Amended Complaint at ¶ 33.   Statements made to promote the assassination of a Council Member must be taken seriously.  Indeed, in this context it must be remembered that on July 23, 2003, another Council Member, James Davis, was assassinated in the Chambers of the City Council.  Moreover, this statement by plaintiff had a direct impact on other Council Members, most notably Council Member Comrie, who acknowledged that he felt "physically threatened". Exhibit "J", Comrie Depo. at p. 47.   Undoubtedly, such statements would have an impact on the "harmony among co-workers" and the "working relationships" at the City Council which would reasonably be expected to cause disruption of the City Council's government operations.

In Blackman v. New York City Transit Authority, 491 F.3d 95 (2d Cir. 2007)(per curiam), the Second Circuit was confronted with a claim of First Amendment retaliation "involving a governmental employee who was fired after he commented that he thought two Transit Authority supervisors who had been recently murdered 'deserved what they got for getting [a Transit Authority employee] fired.'"   Id. at 96.  Although the District Court found that the speech did not address an issue of public concern, the Second Circuit noted that "the question of whether plaintiff's statement touched on matters of public concern is a complex one", and the Court chose to assume that those comments did address an issue of public concern in order to apply the Pickering balancing test.  Id. at 97 (citing, Pickering v. Bd. of Educ., 391 U.S. 563 (1968)).   The Court concluded that:

> assuming arguendo that Blackman's comments did implicate a matter of public concern, we find that, at the balancing stage, the government's interests plainly outweigh those of Blackman.  It is clear . . . that a government official may, in certain circumstances, fire an employee for speaking -- even on a matter of public concern -- where that speech has the potential to disrupt the work environment.

Id. at 11-12.  Applying the Pickering balancing test to the present case, even assuming that plaintiff's "assassination" comment addressed a matter of public concern, plaintiff's right to

- 11 -

make such a comment is decidedly outweighed by the serious disruption that is likely to be caused when a Chief of Staff of a Council Member threatens and/or calls for the assassination of another Council Member.

The two employment actions at issue, the suspension and termination[8], are directly related to the disruptive nature of plaintiff's speech. Indeed, the suspension was imposed specifically because of plaintiff's disruptive conduct during the May 30th Stated Meeting and her comments about assassinating Council Member Comrie's ass made just after that meeting. Exhibit "T", June 28, 2007 letter. Moreover, plaintiff's termination was a reasonable response to her refusal to sign the letter to confirm that she would not repeat such disruptive. In considering plaintiff's admitted speech and the admitted disruption she caused at the May 30th Stated Meeting, as well as the reasonable expectation that statements about assassinating a Council Members ass would create further disruption, the Court should grant defendant's motion for summary judgment and dismiss plaintiff's claim of First Amendment retaliation.

---

[8]    Any assertion that Speaker Quinn did not have the authority to suspend or terminate plaintiff's employment with the City Council (see Exhibit "A", Second Amended Complaint ¶¶ 45, 47-48) is an issue of law, not fact. Moreover, such issues are a matter of state law and are best left to the state courts to resolve. Indeed, in an Article 78 proceeding, plaintiff could have challenged the legality and validity of her suspension, specifically whether Speaker Qunn's alleged acts were "made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." N.Y. Civ. Prac. L. & R. § 7803(3). Under principals of Comity and Federalism the Court should decline to resolve this state law issue, as this state law issue is not an element of any of the claims presented herein and it is thus irrelevant to the resolution of this motion for summary judgment.

## POINT II

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT CONCERNING PLAINTIFF'S FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

Plaintiff alleges she that she was terminated because of her race in violation of her constitutional right to equal protection. Plaintiff's claims are without merit. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). In the employment context, equal protection claims are generally analyzed under the same legal framework as a claim of unlawful discrimination under Title VII of the Civil Rights Act of 1964. See Grant v. Wallingford Board of Education, 195 F.3d 134, 146 (2d Cir. 1999). In order to prove such a claim, plaintiff must allege facts sufficient to support a *prima facie* case of discrimination. Texas Dept. v. Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If successful, the burden of persuasion then shifts to the employer to articulate a "legitimate, non-discriminatory basis" for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). When an employer does so, the plaintiff must demonstrate that the reasons articulated are pretextual. That is, the plaintiff must demonstrate by a preponderance of the evidence (1) that the reasons articulated by the employer are false, and (2) that the real reason for that conduct was unlawful discrimination. See James, 233 F.3d 149, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-10 (1993).

To establish a *prima facie* case of discrimination, an employee must show: (1) that she was within a protected group; (2) that she was performing her duties satisfactorily; (3) that she suffered an adverse employment decision; and (4) that the adverse employment decision

occurred under circumstances giving rise to an inference of race discrimination. See e.g. Peralta v. Rockefeller Univ., 2005 U.S. Dist. LEXIS 10458 at *14 (S.D.N.Y. May 27, 2005). Here, plaintiff cannot satisfy the fourth prong of a *prima facie* case of discrimination.

Plaintiff cannot establish the fourth element of a *prima facie* case of discrimination as plaintiff has not provided any evidence that she was terminated under circumstances giving rise to an inference of race discrimination. Indeed, at her deposition, plaintiff admitted that the only basis for her race discrimination claim is the historical subjugation of black individuals along with the mere fact that she is African-American and Christine Quinn is Caucasian. See Exhibit "C," Plummer Depo. at pp.76-77. This "scant and conclusory testimony" consisting solely of plaintiff's speculation that she was terminated because she is an African-American is an insufficient evidentiary showing to satisfy the fourth prong of a *prima facie* case of discrimination. See Edwards v. City of New York, 2005 U.S. Dist. LEXIS 34376 at *46 (S.D.N.Y. December 16, 2005). Simply because plaintiff, who is African-American, was terminated by Speaker Quinn, who is Caucasian, does not "impel the conclusion that [Quinn terminated plaintiff] *because* she is African-American. 'This is the type of groundless speculation that summary judgment is designed to root out.'" Id. quoting Richardson v. Newburgh Enlarged City Sch. Dist., 984 F. Supp. 735, 744 (S.D.N.Y. 1997). Therefore, it is clear that plaintiff cannot establish a *prima facie* claim of discrimination.

Moreover, even if plaintiff could establish a *prima facie* case of discrimination, the undisputed record shows that a legitimate business reason – plaintiff's disruptive speech – rather than her race was the cause of plaintiff's termination. Plaintiff does not dispute this reason and in fact admits this reason was the basis for her termination in arguing that her First Amendment rights were violated. Exhibit "A", Second Amended Complaint ¶¶ 50-52. Instead,

- 14 -

plaintiff appears to suggest that that the decision of the Speaker to terminate her was discriminatory because the Speaker of the City Council has allegedly never terminated a staff member of the Council before. However, in order to establish an equal protection claim, plaintiff must demonstrate that similarly situated individuals have been treated differently. See Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). Plaintiff has not done so.

In light of plaintiff's admitted disruptive conduct during and after the May 30th Stated Meeting, plaintiff simply cannot establish that it was her race – and not this disruptive conduct – that caused her termination from the City Council.    Accordingly, plaintiff's equal protection claims must be dismissed.

## POINT III

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment substantive due process claim for two reasons. First, the claim is fully subsumed in the factual basis for plaintiff's First Amendment claim, and second, that the conduct asserted does not rise to the level to fairly be said to shock the contemporary conscience.

There is no question that plaintiff's substantive due process claim is based on the same alleged conduct by defendants as is her First Amendment claim, namely dismissing her in retaliation for her alleged exercise of her right to free speech. See Exhibit "A", Second Amended Complaint, ¶¶53-55. Plaintiff does not assert that defendants deprived her of a property interest in her position as Chief of Staff to Councilmember Barron. Indeed, plaintiff cannot make such a claim because it is undisputed that she is an at-will employee in the unclassified service. See New York Civil Service Law §35(c).

- 15 -

In <u>Velez v. Levy</u>, 401 F.3d 75, 94 (2d. Cir. 2005) the Second Circuit affirmed the dismissal of a substantive due process claim because a specific provision of the Constitution, namely the First Amendment, was applicable to the plaintiff's claims. The Court found:

> we have held that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a §1983 suit cannot make reference to the broad notion of substantive due process. <u>See, e.g., Kia P. v. McIntrye,</u> 235 F.3d 749, 757-58 (2d Cir. 2000) ("Where another provision of the Constitution provides an explicit source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."). Because we believe that, as a matter of law, defendants purported actions would not – but for the allegations for First Amendment violations, or (now abandoned) Equal Protection violations – be sufficiently shocking to state substantive due process claims, we conclude that plaintiff's substantive due process claim is either subsumed in her more particularized allegations, or must fail.

<u>Id.</u>, 401 F.3d at 94.

Other courts have applied the above principle in dismissing substantive due process claims. <u>See Malone v. City of New York</u>, 2006 U.S. Dist. LEXIS 61866 *30 (E.D.N.Y. August 30, 2006) ("Any substantive due process claim also fails because Malone has arguably alleged a violation of his right to equal protection, a right which is explicitly protected by the Constitution"); <u>Lonegan v. Hasty</u>, 436 F.Supp.2d 419, 440 (E.D.N.Y. 2006) (dismissing the plaintiffs' substantive due process claims "because they arose from the same conduct by defendants, and seek a remedy for the same injuries, as their Fourth Amendment claims"). The same reasoning applies here, similarly requiring dismissal of plaintiff's substantive due process claim.

Even if plaintiff's substantive due process claim were not subsumed by her First Amendment claim, it should nonetheless be dismissed because neither the Second Amended

- 16 -

Complaint, nor any evidence adduced through discovery, suggests, much less shows that defendants, in dismissing plaintiff, engaged in conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez, 401 F.3d at 93 (citations omitted). In Velez, the Second Circuit observed that "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose, 'unquestionably shock the conscience.'" Id., 401 F.3d at 94 (citation omitted) (holding that a complaint by a former school board member that defendants "intentionally and maliciously fabricated and disseminated falsehoods in a common effort to deprive plaintiff of her job – and of her opportunity to represent her constituents" stated a substantive due process claim). Here, the record shows that defendant Quinn dismissed plaintiff because of plaintiff's admittedly disruptive conduct at the May 30, 2007 Stated Meeting of the New York City Council and because of plaintiff's statement about "assassinating the ass" of Councilmember Leroy Comrie described in detail in Defendant's Local Rule 56.1 Statement ¶¶ 26 through 46, and Point I, above.

Given the undisputed facts surrounding plaintiff's disruptive conduct, it is clear that, Speaker Quinn's decision to dismiss plaintiff cannot be found to be to shock the conscience. Indeed, it quite ironic that, in a case where the plaintiff has admitted to yelling multiple times during a City Council meeting and to threatening to "assassinate" the "ass" of a City Council Member, that *she* asserts defendants engaged in behavior that would shock the conscience.

## POINT IV

## DEFENDANT QUINN IS ENTITLED TO QUALIFIED IMMUNITY

Even if there was a basis for imposing liability on the merits of plaintiff's claims, the claims asserted against Speaker Quinn should be dismissed because she is entitled to

qualified immunity.  Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." Scott v. Harris, ___ U.S. ___, 127 S.Ct. 1769, 1773 (2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  This doctrine is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151 (2001) (quoting Mitchell, 472 U.S. at 526).  To this end, the Supreme Court has "repeatedly stressed" that it is necessary that "qualified immunity questions should be resolved at the earliest possible stage of litigation," to satisfy the goal of the doctrine. Scott, 127 S.Ct at 1773 (quoting Hunter v. Bryant, 502 U.S. 224, 227,112 S. Ct. 534 (1991) (per curiam)).  The question of qualified immunity is independent from the merits of the underlying action and must be examined independent of the underlying claims. See Saucier, 533 U.S. at 204; see also Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288, 1292 (2d Cir. 1990) (citing Mitchell, 472 U.S. at 527-28)).  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Saucier 533 U.S. at 202 (quoting Malley, 475 U.S. at 341).

The qualified immunity determination begins with an analysis of whether, on the facts alleged, the alleged conduct violated a constitutional right.  Scott, 127 S.Ct. at 1774.  Assuming, that the first prong is satisfied, that is, a constitutional violation is established on the facts alleged, the Court must then inquire whether the right was "clearly established" at the time of the alleged incident. Id.  The "clearly established" inquiry requires that if the law did not put the official on notice that his or her conduct would be clearly unlawful, dismissal based on qualified immunity is appropriate. Saucier, 533 U.S. at 202.  The Saucier Court stated that the right that is alleged to have been violated must have been "clearly established in a more particularized, and hence more relevant, sense."  Id. at 202.  As discussed above, plaintiff has

not provided any basis to support any claim that Christine Quinn violated any of her constitutional rights. However, even if this Court were to find that a fact issue exists concerning any alleged deprivation of plaintiff's constitutional rights, defendant Quinn would nonetheless be entitled to qualified immunity because it was objectively reasonable for her to believe that her actions were appropriate and lawful.

Even assuming that there was a viable issue concerning whether plaintiff's constitutional rights were violated, Speaker Quinn is entitled to qualified immunity because, under the circumstances herein, it was objectively reasonable for her to believe that her actions were lawful and proper. See Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995). Moreover, because it was certainly reasonable given the facts and governing law for Speaker Quinn to conclude that plaintiff's speech was disruptive, she is entitled to qualified immunity on the First Amendment claim regardless of whether this Court ultimately determines that plaintiff's speech is actually disruptive as a matter of law. Even if "the employer's firing of the employee actually violates the employee's First Amendment rights, the employer will nonetheless be qualifiedly immune from suit if an objective, reasonable officer could believe that the firing did not violate the employee's rights." Sheppard v. Beerman, 94 F3d 823, 827 (2d Cir. 1996). In this case, following discovery, the record before this Court is clear that, at a minimum, Speaker Quinn could have reasonably believed that plaintiff's speech was disruptive. Accordingly, Speaker Quinn is entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court issue an order granting its motion for summary judgment and dismissing plaintiff's second amended complaint in its entirety, with prejudice, and awarding defendants such other and further relief as this Court may deem just and proper.

Dated:    New York, New York
          October 30, 2007

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-104
                              New York, New York 10007
                              (212) 788-0885

                              By: _____
                                   ERIC EICHENHOLTZ
                                   Assistant Corporation Counsel

PAUL MARKS,
JAMES M. LEMONEDES,
ERIC EICHENHOLTZ
Of Counsel.