UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x   ECF CASE

VIOLA PLUMMER,                                              x

                Plaintiff,                     x    07 Civ. 6154 (WHP)

  -against-                                                x

CHRISTINE QUINN, Speaker of the Council                     x
of the City of New York,
                                                x
                Defendant.
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**ROGER S. WAREHAM**
394 Putnam Avenue
Brooklyn, NY 11216
(718) 230-5270

**NOAH A. KINIGSTEIN**
350 Broadway, 2d floor
New York, NY 10007
(212) 285-9300

DEFENDANT QUINN IS NOT ENTITLED TO
    QUALIFIED IMMUNITY ............................................... 15

CONCLUSION............................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Pages**

Anderson v. Recore, 317 F. 3d 194,197 (2d Cir. 2003).............   16

Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994)...............   3

Cosgrove v. Sears, 9 F.3d 1933, 1040 (2d Cir. 1993..............   10, 11

Jefferies v Harleston, 52 F. 3d 9, 13 (2d Cir. 1995).................   4

LeClair v. Sauders, 627 F.2d 606 (2d Cir. 1980)....................   11

Mount Healthy City School Dist. Bd. Of Educ. v. Doyle,
329 U.S. 274, 283-87 (1977)......................................   3

Peralta v. Rockefeller Univ., 2005 U.S.
Dist Lexis 10458 (S.D. N.Y. May 27, 2005)............................   9

Perry v Sinderman, 408 U.S. 593 (1972)..............................   12

Pickering v Board of Education, 391 U.S. 563 (1968) ............   3

Sheppard v Beerman, 317 F. 3d 351, 355 (2d Cir. 2003) ........   4

Termite Control Corp. v. Horowitz, 28 F.3d 1335,
2353 (2d Cir. 1994).........................................   12

Velez v. Levy 401 F. 3d 75 (2d Cir. 2005) ..........................   13

Village of Willowbrook v. Olech 528 U.S. 562, 564 (2000).....   12

Washington v National Railroad Passenger Corporation,
2003 U.S. Dist. LEXIS 16104  01 Civ. 4201
(BSJ) (SDNY Sept. 12, 2003)......................................   7,8

Waters v. Churchill U.S 661, 672-74 (1994) ...........................   4

**Statutes**

New York City Charter...................................................   2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x  ECF CASE

VIOLA PLUMMER,

                Plaintiff,                07 Civ. 6154 (WHP)

  -against-

CHRISTINE QUINN, Speaker of the Council
of the City of New York,

                Defendant.
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Viola Plummer ("plaintiff"), chief of staff to New York City Councilmember Charles Barron, a US-born, 70-year-old female of African descent (see Defendant's Exhibit "A," Second Amended Complaint at ¶ 1) and a lifelong community activist, brings this action against defendants Christine Quinn, Speaker of the City Council and the City of New York (collectively "defendants") pursuant to 42 U.S.C. §1983 and Articles 1, 8 and 11 of the New York State Constitution, alleging that defendants suspended and fired her in retaliation for speech protected by the First Amendment of the United States Constitution. Plaintiff further alleges that defendants violated her rights to equal protection and substantive due process guaranteed by the Fourteenth Amendment of the United States Constitution and Articles 1, 8 and 11 of the New York State Constitution. The gravamen of Plaintiff's complaint is that the actions taken by defendant Quinn, i.e. the suspension/termination of an employee hired by a fellow City Councilmember, were beyond her authority as Speaker of the City Council,. The alleged

grounds for this action are that the plaintiff engaged in "disruptive actions" and made "threatening statements." In reality, the actions taken by the defendant were based on the plaintiff's race and violated her rights under the First and Fourteenth Amendments to the United States Constitution.

Summary judgment is inappropriate in this case because the record demonstrates there are genuine issues of fact regarding defendants' violation of plaintiff's clearly established constitutional rights and that the actions of defendants were objectively unreasonable.

## STATEMENT OF FACTS

The Court is respectfully referred to plaintiff's response to defendant's Statement of Undisputed Facts under Local Civil Rule 56.1 and the supporting evidence cited to therein for a statement of pertinent and material facts.

## ARGUMENT

### POINT I

### THE SPEAKER OF THE CITY COUNCIL HAS NO AUTHORITY TO SUSPEND, TERMINATE OR OTHERWISE DISCIPLINE STAFF EMPLOYED BY INDIVIDUAL COUNCIL MEMBERS

This point, which defendants have studiously tried to minimize at best and avoid at worse (it is relegated to a footnote [#8] in their memorandum of Law [hereinafter Defendants Memo]), is key to this entire action (Defendant Exhibit A, Second Amended Complaint ¶ 1, 19) and their summary judgment motion which is predicated on the erroneous assumption that defendant had authority in law and in fact to discipline the staff members of individual council members. This is not an abstract discussion of legal theory but of the application of the law to the facts. Defendants cannot establish legally or factually where there is a delegation of power to the Speaker of the Council to discipline councilmembers' staff (See Plaintiff Exhibit 1, Excerpt from

New York City Charter) nor can they cite any instance where, prior to the suspension/termination of Plaintiff, it has happened in practice (See Defendant Exhibit D, Barron Depo. At p. 10; Exhibit E Meara depo at pp. 43, 56, Exhibit F, Quinn depo at p.127; Exhibit I, Kawadler depo at 21). So they are left in a situation that even were they able to prove that Plaintiff's constitutional rights had not been violated (which they cannot) and that she had in fact been disruptive, they have no authority to discipline her for those acts.

## POINT II

### DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT CONCERNING PLAINTIFF'S FIRST AMENDMENT CLAIMS

A plaintiff must satisfy three criteria to prevail on a First Amendment retaliation claim: i.e. 1) that the speech was protected; 2) that she suffered an adverse employment action; and 3) that there was a causal connection between the protected speech and the adverse employment action. Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); see also Mount Healthy City School Dist. Bd. Of Educ. v. Doyle, 329 U.S. 274, 283-87 (1977). Pickering v Board of Education, 391 U.S. 563 (1968) set out the balancing test which determines whether speech is constitutionally protected. The Court first examines whether the speech deals with an "issue of public concern" and then whether the speech was "disruptive." Pickering, 391 U.S. at 568.

Defendants concede that Plaintiff suffered an adverse employment action [Def. Memo p. 5]. There can be no dispute that plaintiff's speech, dealing with the co-naming of four blocks in Bedford-Stuyvesant after Sonny "Abubadika" Carson and Councilmember Comrie's failure to keep his promise to support same, dealt with matters of public concern (See Defendant Exhibit G, Gotbaum depo pp. 14-16; Exhibit F, Quinn depo. Pp. 105-106).

The test now becomes the evaluation of "disruptive." Defendants cite Sheppard v Beerman, 317 F. 3d 351, 355 (2d Cir. 2003) for the proposition that a public **employer** [emphasis ours] may terminate an employee where speech is "sufficiently disruptive to government operations so that the disruption outweighs the value of the speech." (Defendants Memorandum of Law [hereinafter Defendants Memo], p.5. Where there is no actual disruption, a government employer may move to prevent potential disruption.when an employer reasonably believes the employee's speech threatens to interfere with government operations. Waters v. Churchill U.S 661, 672-74 (1994) . However this Circuit has noted that "the closer the employee's speech reflects on matters of public concern, the greater must be the employer's showing that the speech is likely to be disruptive before it may be punished." Jefferies v Harleston, 52 F. 3d 9, 13 (2d Cir. 1995).

Defendants base their argument that plaintiff's action satisfy the disruptive standard by citing: a) Plaintiff's admission during her deposition that her yelling "liar" was "disruptive" (see Def. Memo pp 5-6); and b) defendant Quinn's (whom they mistakenly continue to refer to as "the employer") "reasonable belief that plaintiff's speech threatened to interfere with government operations."

The facts demonstrate otherwise. While Ms. Plummer's words may have been annoying and technically "disruptive," they did not rise to the level of interference with government operations sufficient to eliminate her constitutional protection. It is a fact that, despite the interruptions from the balcony and the floor, the vote on the street co-naming took place and the agenda of the Stated Meeting of May 30th was completed (See Exhibit. E, Meary depo. p. . 23; Exhibit I, Kawadler depo p. 12; Exhibit G, Gotbaum depo. pp 24-25). Indeed, Public Advocate

Gotbaum who presided over the meeting and who had the authority to clear the room of disruptive elements testified in regards to the noise from the floor of the Council chambers:

> Q: Did you direct the sergeant at arms to go to any people in particular and ask them to be quiet?
> A: No. At one point, I think it was towards the end, "If you aren't quiet, I will have to have you removed."
> Q; Do you remember whom you directed that towards?
> A: No, Well, I directed it towards whoever was making the noises, but I couldn't see who it ws.
> Q: Was it the same people , or could you tell, or was it different people?
> A: In the gallery it seemed to be the same person, but I couldn't be100 percent sure, but it seemed to be he same person, and I couldn't see who it was.
> Q: Did you at any point direct the sergeant at arms to actually go identify -
> A; No.
> Q: - who the person was?
> A; No.
> Q: And remove them?
> A: No.
> Q: Did you ever feel that meeting, the stated meeting, got out of control?
> A: No. It was noisy.
> Q: Did you ever feel a need to clear the chamber -
> A: No.
> Q: - because of the disruption?
> A: No. You threaten to do it.
> Q: During that meeting did the Speaker ever send you any message around trying to bring order to the meeting?
> A: No.

Exhibit G., Gotbaum depo. pp.23-25.

Defendants fruitlessly attempt to buttress their position that defendants had a reasonable expectation of future disruption by referring to Plaintiff's now notorious comment on the assassination of Councilmember Comrie's ass which she made after the Stated Meeting, while summarizing its outcome to community members who had supported the co-naming. Plaintiff, in her capacity as a well-known community activist, at that summation expanded on her initial remark, "to assassinate Leroy Comrie's ass, that's what I said, means his whole stuff, his whole

5

run for Queens Borought President, his whole get the people to support him." (See Exhibit F, Quinn Depo. At p 113, Exhibit R Audio Recording).

The defendants seemed to be more agitated than Councilman Comrie by the plaintiff's remarks. It was the defendants who initiated security for the Councilman (for one evening, see Exhibit J, Comrie Depo. at 49.) He declined additional security (See Exhibit H, D'Alba Depo.p.27-28) Councilmember Comrie never filed a police report in the matter. However, Councilmember Comrie was very clear that Plaintiff should have been fired for the assassination remark. He later said that her words in the chamber should also serve as a basis for her termination, but he couldn't remember what they were. (Comrie Depo at 66).

Finally, the facts belie any argument by defendants of reasonable belief of future disruptions. Defendants refer to Plaintiff's history of disruptive behavior in meetings (See Exhibit F, Quinn Depo. pp. 26-37) but can concretely cite only one meeting in early 2007 co-chaired by Councilmembers Vallone and Seabrook (See Exhibit H, head of security Carl D'Alba Depo p. 34). Plaintiff testified that at that meeting she made a "gasping sound" and said "oh, wow" when Police Commissioner Kelly condescendingly admonished Councilwoman Letitia James. (See Defendant Exhibit C, Plummer Depo. pp 21-22). At that meeting Councilmember Vallone never said anything to her or took any action to remove her from the room which was within his prerogative as chair. He allegedly complained to the head of security Carl D'Alba but no further steps were taken (Exhibit H D'Alba Depo. P. 32).

No action was taken by defendants for over four weeks after the May 30th stated meeting. During that time, two additional stated meetings took place which were attended by Plaintiff where no disruptions occurred.( See Exhibit E, Meara Depo. P. 44; Exhibit G Gotbaum Depo. P. 28). During those four weeks, defendants moved from the constitutionally untenable position of

disciplining plaintiff for her Comrie remarks to developing a theory of "disruption" which cannot survive constitutional scrutiny.

It is clear that the admittedly adverse actions taken by defendants were tied to Plaintiff's speech and not her disruptiveness.

Defendants cite <u>Washington v National Railroad Passenger Corporation</u>, 2003 U.S. Dist. LEXIS 16104 at *19-20, 01 Civ. 4201 (BSJ) (SDNY Sept. 12, 2003) in support of their contention that Plaintiff's admission that her yelling was disruptive "preclude[s] any need for a factual determination on the issue as to whether the speech had the potential for disruption." (Def. Memo p 9). Defendants' analysis overlooks three key points in <u>Washington</u>.

First. The <u>Washington</u> Plaintiff was given an opportunity to explain her side of the story to the investigating authority. Defendants never approached plaintiff or her employer, Councilmember Barron before they took their actions. (See Exhibit D, Barron Depo. P. 28, Exhibit F, Quinn Depo. pp. 23-24).

Secondly, the Court notes in <u>Washington</u>, *"On the other side of the equation, speaking out against racism is certainly worthy of protection. However, in this case, plaintiff does not contend that Amtrak's police officers were engaged in systematic racial discrimination in their treatment of people in Pennsylvania Station's concourse..."* (<u>Washington</u> at 21). If anything is clear from this case, it is plaintiff's resistance to and exposure of the institutional racism in the City Council exemplified by the defendants' unprecedented removal of the name from a street co-naming package of a hero to the Black community whose co-naming had been approved by thousands of Black community members, the local Community Board and the elected Councilmember. The final vote on the package were almost strictly along racial lines (See Defendant Exhibit D, Barron Depo. pp. 23-25.