Thirdly, in footnote 2 of <u>Washington</u>, the Court notes that it is aware that the Second Circuit has recently stated that: *"While as a general rule the [Pickering] test is a matter of law for the the district court to apply, where there are questions of fact relevant to that application, this Court has made known that 'we can envision cases in which the question of the degree to which the employee's speech could reasonably have been deemed to impede the employer's efficient operation would properly be regarded as a question of fact, to be answered by the jury prior to the [district] court's application of the Pickering balancing test.'"* The instant case is one of those alluded to.

Plaintiff's suspension and termination are directly related to her speech, not any disruptive conduct. Plaintiff's vocal support for the interests of the Black Community, the Sonny Carson street co-naming and her close identification with her employer, Councilmember Barron are being used as a racial springboard for defendant Quinn's post City Council political aspirations (See Defendant Exhibit D, Barron Depo. p. 24; Exhibit C, Plummer Depo pp. 74-76)

The termination of plaintiff for refusal to sign a letter with conditions no other employee was subject to, at the behest of a person who was not her employer is anything but reasonable. It is interesting to note that defendants maintain that plaintiff's behavior was worthy of suspension and termination but not of removal from the premises where the disruptions allegedly occurred.

Plaintiff has clearly demonstrated that her constitutional rights have been violated.

### POINT II.

### Defendant's Motion For Summary Judgment Must Be Denied Since Plaintiff Has Alleged Genuine Issues of Material Fact Regarding Plaintiff's Fourteenth Amendment Equal Protection Cause of Action

The Defendants then move for summary judgment in regards to Plaintiff's Equal Protection Cause of Action. For the following reasons the Defendants' motion must be denied.

Initially the defendants state that in order for a plaintiff to establish a prima facies cause of action, the employee must show : (1) that she is in the protected group; (2) that she was performing her duties satisfactorily; (3) that she suffered an adverse employment decision; and (4) that the adverse employment decision occurred giving rise to an inference of race discrimination. _Peralta v. Rockefeller Univ.,_ 2005 U.S. Dist Lexis 10458 (S.D. N.Y. May 27, 2005). (See page 14 of Def. Memo). The Defendants then concede that the Plaintiff has established the first three elements, but state that she can not establish the fourth element, i.e. that she was terminated under circumstances raising an inference of discrimination. The Defendants are wrong.

When the defendant Christine Quinn was deposed she stated that the discharge of Ms. Plummer was the first time an employee of a City Councilperson was discharged by the head of the City Council (see Defendant Exhibit F, Quinn Depo. p. 127 ). Ms. Quinn testified that although she was familiar with the New York City Council Policy on Harassment and Discrimination (Plaintiff Exhibit 2) it was not used in this case (id.p. 132 ). Ms. Quinn went on to state that this was the first time that a street naming was removed by the Parks and Recreation Department before (id. at p 82). This was the first time she as the Speaker of the City Council investigated the propriety of an individual whose name was proposed for a street (id at p 92).

In regards to the manner of disciplining and ultimately discharging Ms. Plummer, Ms. Quinn never spoke to her employer and boss Council member Charles Barron (id. at page 116). Ms. Quinn testified that she never spoke to the head of security for the City Council to have Ms.

Plummer removed from the stated meeting and that no one had ever been terminated in this manner (id at p. 127 ).

The testimony of the defendant Quinn establishes that Ms. Plummer was treated in a different, if not a unique manner. Ms. Quinn did not file a charge against Ms. Plummer utilizing the established and regular procedure, that is through the policy of the City Council Rules and Regulations Regarding Harassment and Discrimination (Plaintiff's Exhibit 2). To utilize that procedure which recognizes a category of employees of individual councilmembers would be to acknowledge that she did not have jurisdiction over Ms. Plummer. Ms. Quinn singled out Ms. Plummer and treated her in a different manner than any one else had ever been treated in the City Council and the established rules. Please take judicial notice that when Councilmember Gallagher (one of the three white members of the Parks & Recreation Committee who removed Sonny Carson's name from the co-naming package) was indicted for rape this year, Defendant Quinn did not hesitate to refer the case to the Standards & Ethics Committee.[1] The law is clear that when an employer fails to follow its own rules and regulations, it is the employer that must bear the burden of its own violation, including as in this case raising the genuine inference of discrimination.

In *Cosgrove v. Sears*, 9 F.3d 1933, 1040 (2d Cir. 1993), the Second Circuit stated:

> The district court erred in finding that Sears would have made the same decision even absent the discriminatory motive, since one cannot know whether the follow-up steps would have improved Cosgrove's performance. In short, it cannot be determined whether Sears would have discharged Cosgrove if she had received the manual-mandated follow-up counselling and further evaluation. In *Vaughn v. Edel*, 918 F.2d 517 (5th Cir. 1990), the plaintiff, who had a record of low work product and excessive

---

[1]. Chayes, Matthew, "Councilman says he's Innocent, Newsday, p A10, August 4, 2007

10

> office visits, was denied formal criticism of her work because of her race. *Id.* at 520. The Fifth Circuit found that the plaintiff was the victim of discriminatory discharge because "the same opportunity to improve her performance, and perhaps her relative ranking," which was open to all other employees was denied to her. *Id.* at 522. In *Vaughn*, the court concluded that the employer must "bear the cost of its lost opportunity to determine whether [the employee discriminated against] might have remained on of the two 'lowest ranked' contract analysts had it not made decisions based on race." *Id.* at 523.

The Defendants by failing or refusing to comply with its own internal procedures has created the situation that resulted in Ms. Plummer being terminated in contravention of the City Council's own procedures of going through the usual channels of the City Council Policy on Harassment and Discrimination it must now bear the cost of its discriminatory and retaliatory acts. This entire situation could have been rendered moot if Ms. Quinn had followed her own rules, and in failing to comply she can not now gain the burden of proof benefit. If the proper rules had been followed and an approach had been made to Ms. Plummer through her actual employer Charles Barron, there is a great possibility that a resolution could have been arrived at. Quinn's disregard of the rules and the making up of others are at the center of this case.

In addition, in *LeClair v. Sauders*, 627 F.2d 606 (2d Cir. 1980), the Second Circuit held an individual could establish a claim of a violation of the equal protection clause by establishing that he/she was selectively prosecuted. *LeClair*, 627 F,2d at page 608. As the court held in LeClair:

> Although not precisely on point, cases involving the criminal defense of selective prosecution provide a useful analogy. In *United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974), the court held:
>> "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the change against him, he has been singled out for prosecution, and (2) that the government's discriminatory

11

selection of him for prosecution has been invidious or in bad faith, i.e. based upon such impermissible consideration as race religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."

(citations omitted) LeClair, 627 F.2d at page 609.

In the case at bar, Ms. Plummer satisfies both standards of the *LeClair* test. First, Ms. Quinn has testified that no one has ever been treated in the same manner as Ms. Plummer. Second, the very rules of the City Council were not complied with, indicating the usual and regular way employees of the City Council are to be treated, thus proving that Ms. Plummer was singled out. Third, that Ms. Plummer was singled out because of her protected speech and advocacy, and or her race. What is known is that Ms. Quinn treated Ms. Plummer differently because of her advocacy regarding the naming of a street after Mr. Sonny Carson. It is a genuine issue of material fact whether she did so to chill Ms. Plummer's or Mr. Barron's First Amendment rights or to selectively prosecute Ms. Plummer in violation of the Council's own rules. In any case, there exists a genuine issue of material fact for a fact finder. *Termite Control Corp. v. Horowitz*, 28 F.3d 1335, 2353 (2d Cir. 1994)(finding an issue of material fact as to whether defendants "singled out" plaintiff company "with a malicious or bad faith intent to injure" it).

Finally, in *Village of Willowbrook v. Olech* 528 U.S. 562, 564 (2000)(per curiam), the Supreme Court held that the allegation that the plaintiff had been "intentionally treated differently from others similarly situated" with no " rational basis for the difference of treatment' was enough to state a constitutional claim. As ths Supreme Court held:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City Bridge Co. v. Dakota County,

12

> 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co., supra, at 445 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)).

Olech, 528 U.S. at page 564.

In the case at bar, Ms. Plummer has proven the elements of an individual who is a "class of one". Speaker Quinn's actions were irrational in that she ignored the standard departmental policy in filing a charge as per the City Council's on Harassment and Discrimination and decided to discipline Ms. Plummer regardless of the stated rules. This is legally irrational. *Bizzaro v. Miranda* 394 F.3d 82, 87 (2nd Cir. 2005). Ms. Quinn's actions were the definition of arbitrary and it is clear that Ms. Plummer has established genuine issues of material facts to defeat the defendants' motion for summary judgment. The defendants' statements to the contrary, Ms. Quinn proudly stated throughout her deposition that she made the determination to discipline and discharge Ms. Plummer without a second thought regarding the department's policy and procedures and this creates genuine issues of material facts regarding why Ms. Plummer was singled out in a classic case of being treated as a "class of one."

## POINT IV

**PLAINTIFFS FOURTEENTH AMENDMENT DUE PROCESS CLAIM MUST BE UPHELD**

The fact that plaintiff is an "employee at will" does not remove her from the protection of the Fourteenth Amendment. The Supreme Court in Perry v Sinderman, 408 U.S. 593 (1972) noted that:

> For at least a quarter of a century, this Court has made clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests–especially his interest in freedom of speech. For the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.

Perry v. Sinderman, 408 U.S. at 596-598. (citations omitted).

Defendants argue that Plaintiff's raises the same factual basis for her First Amendment and Fourteenth Amendment claims and therefore the latter should be denied.

Plaintiff maintains, contrary to defendants' conclusions (Def. Memo p. 17), that the Second Amended Complaint and the evidence adduced through discovery do indeed meet the shock the conscience standard necessary, Velez v. Levy 401 F. 3d 75 (2d Cir. 2005) to maintain her Fourteenth Amendment claim. As noted in Levy, *"The measure of what is conscience-shocking is no calibrated yard stick."* Velez at 93.

The sheer audacity of taking the unprecedented step of suspending and then terminating plaintiff, without a hearing but most importantly, without any legal or factual basis to do so is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez at 93.

Defendants have manufactured a theory in an attempt to justify the indefensible. They first said that the source of the Speaker's authority to suspend/terminate staff members of individual council members lay in "the inherent power as the Speaker." (See Defendant Exhibit

14

I, Kawadler Depo p. 51). Unfortunately, no one told defendant Quinn of her "inherent powers as speaker."

>    Q:   Are you familiar with a term, the inherent power as Speaker?
>    A:   No...
>    Q:   Have you ever heard that term before?
>    A:   No.
>    Q:   Do you have an idea of what it might mean?
>    Mr. Lemonedes:   Objection
>    Q:   If it was used in terms -
>    Mr. Lemonedes:   Don't speculate. Please.

Defendant Exhibit F, Quinn Depo. p. 82.

Underlying this twenty-first century version of the feudalistic divine right of queens is an absurd thesis that the City Council is not simply a legislative body as set out in the New York City Charter (Plaintiff Exhibit 1) but it is also an agency. And the Speaker as head of this Agency has the right to suspend and terminate employees whom she never hired (Defendant Exhibit F, Quinn Depo. pp. 12-20). This upside down interpretation of the New York City Charter is without foundation and fundamentally anti-democratic. When implemented as in the instant case, this theory shocks the contemporary conscience.

There is a genuine issue of material fact concerning Defendants' violation of Plaintiff's rights under the Fourteenth Amendment.

## POINT V

### DEFENDANT QUINN IS NOT ENTITLED TO QUALIFIED IMMUNITY

Finally, this Court must reject defendant Quinn's request for qualified immunity. Under the doctrine of qualified immunity, a government official performing a discretionary function is shielded from liability for civil damages if her conduct did not violate clearly established rights

or if it would have been objectively reasonable for the official to believe that actions violated plaintiff's rights. Nothing in the City Charter, the Rules of Council nor prior practice provide any basis for the Speaker to believe that she had the power to discipline the staff members of other City Councilmembers (Exhibit F, Quinn Depo. p 127).   Therefore it was not objectively reasonable for the Speaker that she, acting alone, had the power to suspend, terminate or otherwise discipline a staff member, particularly the Chief of Staff, of another City Council Member. Previous cases of the Supreme Court and the Second Circuit have long recognized and defined the constitutional rights of cases involving public employees. Anderson v. Recore, 317 F. 3d 194,197 (2d Cir. 2003).

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court issue an order denying Defendants motion for summary judgment.

Dated:   Brooklyn, New York
         November 13, 2008

_____
ROGER S. WAREHAM (RW4751)
394 Putnam Avenue
Brooklyn, NY 11216
(718) 230-5270

_____
NOAH A. KINIGSTEIN
315 Broadway
New York, NY 10007
(212) 285-9300