Docket No. 07 Civ. 6154 (WHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIOLA PLUMMER,

                                    Plaintiff,

-against-

CHRISTINE QUINN, Speaker of the City Council, CITY OF NEW YORK,

                                    Defendants.

**MEMORANDUM OF LAW IN REPLY TO THE NOVEMBER 13, 2007 MEMORANDUM OF LAW SUBMITTED BY *AMICI CURIAE***

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Paul Marks*
             *James M. Lemonedes*
             *Eric Eichenholtz*

*Tel: (212) 788-0885*
*Matter No. 2007-021010*

## TABLE OF CONTENTS

**Page**

ARGUMENT..................................................................................................................1

    POINT I......................................................................................................................1

        THE ARGUMENT OF *AMICI* CONCERNING THE SPEECH AND DEBATE CLAUSE IS NOT SUPPORTED BY THE FACTS OF THIS CASE

    POINT II....................................................................................................................3

        PLAINTIFF WAS PROPERLY SUSPENDED FOR ENGAGING IN SPEECH THAT IS DISRUPTIVE TO EFFICIENT GOVERNMENT OPERATIONS

    POINT III..................................................................................................................5

        DEFENDANT QUINN IS ENTITLED TO QUALIFIED IMMUNITY

CONCLUSION.............................................................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

VIOLA PLUMMER,

                                             Plaintiff,

                -against-                                07 Civ. 6154 (WHP)

CHRISTINE QUINN, Speaker of the City Council,
CITY OF NEW YORK,

                                             Defendants.

----------------------------------------------------------------- x

**MEMORANDUM OF LAW IN REPLY TO THE NOVEMBER 13, 2007 MEMORANDUM OF LAW SUBMITTED BY *AMICI CURIAE***

**ARGUMENT**

**POINT I**

**THE ARGUMENT OF *AMICI* CONCERNING THE SPEECH AND DEBATE CLAUSE IS NOT SUPPORTED BY THE FACTS OF THIS CASE**

      At the beginning of their memorandum of law, *amici* reiterate the contention of the plaintiff that Speaker Quinn does not have the power under the City Charter to discipline employees of the City Council. *Amici* then present the theory that the discipline of plaintiff violates New York City Charter § 49, a provision that *amici* contend parallels the Speech and Debate Clause of the United States Constitution. Much like plaintiff's arguments concerning the alleged lack of authority of the City Council Speaker to discipline certain City Council staff members, *amici's* legal argument is not based on an alleged violation of the United States Constitution, but rather a request for this Court to interpret the New York City Charter in order to construe §49 to prohibit the Speaker from taking disciplinary action.

As discussed in defendants' reply memorandum of law, the issue of the Speker's authority to discipline employees is not relevant to the constitutional claims before this Court. See Defendants' Reply Memorandum at pp. 2-4. Moreover, it is clear that the argument advanced by *amici*, which relies almost exclusively on the United States Supreme Court holding in Gravel v. United States, 408 U.S. 606 (1972), in which the United States was prohibited from questioning a staff member of former Senator Mike Gravel concerning one of the Senator's legislative acts, is inapplicable to to the facts of this case. As *amici* implicitly acknowledge, the argued protections of the Speech and Debate Clause (and the provision of the City Charter *amici* claim to be analogous) are limited to situations where a legislator (or his or her staff) is acting pursuant to his or her legislative functions. See *Amicus* Memorandum of Law at p. 6. Here, by contrast, the discipline of plaintiff was based solely on her own misconduct in disrupting a City Council meeting and not on any legislative action taken by Council Member Barron. There is no evidence in the record, nor does plaintiff even suggest, that her disruption during the City Council meeting and subsequent call for the "assassination" of Council Member Comrie was somehow at the behest of Council Member Barron or was made in furtherance of his legislative functions. Indeed, in her complaint, plaintiff unequivocally states that she was acting in her individual capacity when she was disrupting the Council Meeting and making the comments about Council Member Comrie. See Declaration of Eric Eichenholtz, dated October 30, 2007 ("Eichenholtz Decl."), Exhibit "A," Second Amended Complaint ¶¶30, 32.

Thus, the reliance of *amici* on the Speech and Debate Clause, which provides protections only to legislators performing their legislative functions, is misplaced and

unavailing.[1] Clearly aware of this fact, *amici* proceed to provide pages of empty rhetoric entirely devoid of any legal or factual support concerning the fact that disciplining plaintiff will somehow have a "devastating impact" on the operations of Council Member Barron's office. See *Amicus* Memorandum of Law at p. 6. The unsupported and speculative rhetoric of *amici* concerning the alleged "devastating impact" on Council Member Barron's office operation is particularly hollow considering the fact that Council Member Barron operated his office for about a *year* without a Chief of Staff prior to hiring the plaintiff. See Eichenholtz Decl., Exhibit "D", Barron Dep. at p. 9.

Thus it is clear that the argument of *amici* is unavailing and, as set forth in defendants' moving and reply papers, the Speaker of the City Council can take action against a City Council staff member for disruptive conduct without offending the Constitution.

## POINT II

### PLAINTIFF WAS PROPERLY SUSPENDED FOR ENGAGING IN SPEECH THAT IS DISRUPTIVE TO EFFICIENT GOVERNMENT OPERATIONS

The second point of the *amicus* brief essentially echoes the flawed First Amendment arguments advanced by plaintiff in her opposition to defendants' motion for summary judgment. Much like plaintiff, *amici* rely on the preposterous notion that "disruptive" speech is reserved solely for speech that grinds the workings of the City Council to a halt. See *Amicus* Memorandum of Law at p. 11 (Arguing plaintiff's speech was not disruptive because "The meeting continued to adjournment without incident.").

---

[1] The irony of the citation to New York City Charter § 49 and the invocation of the need for open debate amongst the Council Members as a vehicle for supporting the plaintiff's litigation position should not be lost on the Court. Ironically, it was the *plaintiff* who, in yelling and interrupting the speeches of several Council Members, sought to interfere with and disrupt their right to express their opinion and debate on the Council floor.

As defendants discussed in detail in their reply memorandum, law is clear that disruptive speech is not just speech that is so severely disruptive that it brings the government to its knees, but is instead speech that impairs "the efficiency of government operations." Jefferies v. Harelston, 52 F.3d 9, 10 (2d Cir 1995); Sheppard v. Beerman, 317 F.3d 351, 355-356 (2d Cir. 2003). Defendants also demonstrated that, plaintiff's admitted conduct, including yelling during the speeches of multiple council members and to stating that she would "assassinate" the "ass" of a Council Member was clearly disruptive. Contrary to the dismissive remarks of *amici* that plaitniff's conduct had no "discernable impact" on the Council, it is clear that, at a minimum, plaintiff's conduct delayed City Council proceedings and caused several Council staff members to address the potential threat created by the "assassination" remark. It is also clear that defendants' reasonable belief of further disruption was evidenced by many things, including the actual disruption to the City Council meeting evidenced by the transcript, audio and video recordings of the meeting as well as the reaction and concern of the City Council security staff and Council Member Leroy Comrie that the "assassination" remark could be taken as a call to violence by a member of the public. Given the fact that Council Member James Davis was assassinated in 2003, the concern about violence against a Council Member was clearly actual and genuine. Thus, Speaker Quinn's decision to suspend plaintiff for this conduct and to terminate plaintiff after she refused to agree not to engage in further disruptive conduct does not violate the First Amendment.

Contrasting the facts of Rankin v. McPherson, 483 U.S. 378 (1987), relied on by *amici* in support of their argument, to those of the instant case further illustrates this point. In Rankin, a deputy constable made remarks to a colleague expressing hope that someone would

"get him" following an assassination attempt on President Reagan. Rankin, 483 U.S. at 381. In applying the Pickering balancing test, the Supreme Court stated:

> While McPherson's statement was made at the workplace, there is no evidence that it interfered with the efficient functioning of the office. The Constable was evidently not afraid that McPherson had disturbed or interrupted other employees -- he did not inquire to whom respondent had made the remark and testified that he 'was not concerned who she had made it to,'

Id. at 388-389. It is almost laughable that *amici* now attempt to analogize plaintiff's conduct to the idle workplace chatter that was the subject of the Rankin case. Plaintiff did not have a private conversation with co-workers in a private office. In fact, the exact opposite occurred in this case. Having been granted access to the floor of the New York City Council, plaintiff proceeded to yell and interrupt the speeches of Council Members. Plaintiff then proceeded to leave the Council chamber, approach a group of supporters and reporters and publicly call for the "assassination" of the "ass" of one of those Council Members. Thus, it is clear that in direct contrast to Rankin, the public conduct of plaintiff had a clear impact on the efficient functioning of the City Council.

Accordingly, it is quite clear that Speaker Quinn's decision to discipline plaintiff for her public and disruptive conduct did not violate plaintiff's First Amendment rights.

### POINT III

### DEFENDANT QUINN IS ENTITLED TO QUALIFIED IMMUNITY

*Amici* also argue that defendant Quinn is not entitled to qualified immunity. The argument of *amici* in this regard parallels (in some instances word for word) the argument of the plaintiff concerning qualified immunity. Accordingly, the defendants respectfully refer the

- 6 -

Court to Point IV of their Reply Memorandum of Law, dated November 20, 2007, for a discussion of the reasons that argument is without merit.

## CONCLUSION

For the reasons set forth above as well as in defendants' moving and reply papers, defendants respectfully request that the Court issue an order granting its motion for summary judgment and dismissing plaintiff's second amended complaint in its entirety, with prejudice, and awarding defendants such other and further relief as this Court may deem just and proper.

Dated:     New York, New York
           December 18, 2007

>                              MICHAEL A. CARDOZO
>                              Corporation Counsel of the
>                                City of New York
>                              Attorney for Defendants
>                              100 Church Street, Room 2-104
>                              New York, New York 10007
>                              (212) 788-0885
>                              eeichenh@law.nyc.gov
>
>                              By: _____
>                                   ERIC EICHENHOLTZ
>                                   Assistant Corporation Counsel

PAUL MARKS,
JAMES M. LEMONEDES,
ERIC EICHENHOLTZ
Of Counsel.

Case 1:07-cv-06154-WHP     Document 36     Filed 12/18/2007     Page 10 of 10